THE BALTIMORE LUGGAGE COMPANY *v.* LIGON,
III, Trading as NORTH END CONTRACTORS

[No. 44, October Term, 1955.]

408

*Decided December 5, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Albert L. Sklar,* with whom were *Henry R. Wolfe* and *J. Leonard Feinglass* on the brief, for appellant.

*Clayton A. Dietrich,* for appellee.

HAMMOND, J., delivered the opinion of the Court.

William D. Ligon, III, trading as North End Contractors, sued to recover the balance due on the contract price for excavating and removing earth in the rear of the building of The Baltimore Luggage Company so as to make a parking area. The luggage company filed a counter-claim to recover the monies it had paid for the work the contractor did not do, and which it claims the contract required him to do. The case was submitted to a jury on issues and the luggage company appeals from the judgment for the contractor entered by the court on the special verdict.

The parties are in accord that this appeal requires the answering of three questions: (1) whether the issues submitted and the court's instructions as to them were adequate and proper, or whether they were inconsistent, conflicting and, so, confusing to the jury; (2) whether the court correctly interpreted and applied the findings of the jury in entering the judgment for the contractor; and (3) whether the appeal was taken in time or whether the contractor's motion to dismiss, on the ground that the filing was late, should be granted.

The parties entered into a written contract dated June 14, 1952, by which the contractor, for the sum of $4,-778.00, agreed to excavate and remove dirt from an area in the rear of the luggage company's building, in accordance with the drawing of an architect attached to the agreement as part thereof. The parties disagreed, and now differ, as to the true meaning of the contract and the extent of the undertaking. The architect's drawing showed that slopes on a two to one grade were to be constructed where the land of the luggage company met the land of the Pennsylvania Railroad on one side and the land of the City of Baltimore—a playground—

on another side. The contractor claims that the top of each of the slopes was to be at the boundary line, so that all of each slope would be on the land of the luggage company, with the toe of each slope some twenty-five or thirty feet to the inside of the luggage company's line. The contrary contention is that the toe of each slope was to be at the boundary line, so that all of each slope would be on the property of the railroad or the City, respectively, and the tops of the slopes would be twenty-five or thirty feet within the land of these adjoining owners. When the contractor had completed the work according to his version of the contract, he called for an inspection by the luggage company and was given a check for half of the contract price. Shortly thereafter, he was told that he was expected to complete the project according to the version of the luggage company. He testifies that this he refused to do unless he was given a letter stating that he would be paid for the extra work. The contrary testimony is that all that was requested was a letter of indemnification against the consequences of trespass on the land of the railroad company and the City in the doing of the work. The luggage company sent this letter: "This is to advise you that if you follow the instructions of our architect, Morris Zimlin, in doing the job in the rear of our building, we will take the responsibility of the possibility of your going beyond our property line."

The contractor, now being fully aware that all of the work demanded would be beyond the property lines of the luggage company, refused to proceed and removed his equipment from the site. Thereafter, the luggage company paid its architect an additional fee of $250.00 and, at his suggestion, engaged the services of engineers at a fee of $255.00 to determine how many cubic yards of earth would have to be moved and replaced to construct the slope as was desired, and then hired the Arbutus Excavating Company, the next to low bidder at the time of the award, to complete the work. The testimony is undisputed that the removal of 4,200 cubic yards

was necessary to complete the work as the luggage company wanted it done and that there was no earth needed to be moved or was moved within the area already excavated by the contractor. The luggage company paid $2,310.00 to Arbutus to move the 4,200 cubic yards of earth. The contractor's suit sought the difference between $2,389.00, which had been paid him, and the contract price of $4,778.00, and the luggage company's counter-claim asked the $250.00 it had paid the architect, the $255.00 it had paid the engineers, and the $2,310.00 it had paid to Arbutus.

At the conclusion of the testimony, the court submitted seven issues to the jury: (1) Did the contractor fully complete the contract? The jury's answer was No. (2) Did the contractor do any extra work, and (3) if so, its value? The jury answered Yes, and that the extra value was $377.00. No error is claimed in the submission of issues two and three or in the answers, it being undisputed that extra work was ordered and done at a fair price. The fourth issue asked, if the jury found the contractor did not fully complete the contract, what, if any, expense was the luggage company reasonably put to to complete the contract? The jury's answer was $125.00. The fifth issue was: What was the value of the excavation actually done by the contractor? The answer was "$3,185.32 less payment of $2,389.00 or $796.32 still due." The sixth issue was: Did any acts of the luggage company delay work on the contract, to which the answer was No, and the seventh issue, which became immaterial, was what loss did the contractor suffer by the delay if the answer to six is Yes.

The jury's verdict was returned on January 21, 1955. On January 26, 1955, the court entered a judgment on the verdict for $1,048.00, which was $796.00, plus $377.00 for the extra work, less $125.00 which the luggage company spent to complete the contract, as the jury saw it.

The luggage company filed a motion for a judgment n.o.v. or, in the alternative, for a new trial, on January

28, 1955, and on March 11, the motion was denied. An appeal was filed on March 26. The dispute as to whether the appeal is timely stems from whether the judgment entered on January 26 was a judgment *nisi* or a final judgment.

It is to be noted that the contract admittedly was wholly in writing. Nevertheless, each side offered testimony to show that the true reading and meaning of the architect's drawings were as it interpreted the contract. The contractor himself and his foreman testified that they were accustomed to reading blue prints, that to them the prints meant, as any other similar prints would mean, that the slopes were all to be on the property of the luggage company, with the top of the slope on the boundary line, that they had requested that stakes be placed by the owner to designate the property lines, as the contract specifically provided would be done, because it could not be told from the prints where the property lines were. They further pointed out that attached to the contract, as a specific part of it, was a letter from the contractor to the luggage company dated June 14, 1952, which stated that the excavation was to be as per plans of the architect in an area "bounded by West Mulberry Street, Pennsylvania R. Rd., Baltimore City School and the 'existing' street south of the property." They testified further that if the contract meant what the luggage company said it means, the top of the slope on a two to one grade would be under the middle of the Pennsylvania Railroad tracks and that that portion of the work as finally done by Arbutus was not according to the original plans, but that the grade was far steeper and that a retaining wall had been built to hold the grade in place. On the other hand, the luggage company offered testimony to show that the drawings, read by those accustomed to reading them and competent to do so, would mean that the slope would be all outside the property lines of the luggage company and that this was what was intended by that company. This testimony

on both sides came in without objection. This being so, as was said in *Trust Company v. Williams, Inc.*, 168 Md. 588, 597: "There were no exceptions to the admitted parol evidence on the subject, and it is therefore unnecessary to decide whether that evidence was admissible because of any ambiguity in the terms of the written agreements under consideration."

The court did not construe the contract and instruct the jury as to its meaning and effect. The contractor asked for instructions that the meaning and effect of the contract was as he contended and, at the conclusion of the court's charge, excepted to its failure to so instruct, but the contractor has not appealed. The luggage company neither asked the court to construe the contract nor excepted to its failure to do so. This being so, he may not complain here for the first time that the jury was improperly allowed to pass on the contract. General Rules of Practice and Procedure, Part Three, Sec. III, Rule 6 (c), 6 (d) and 7 (b). It is not necessary for us, therefore, to determine whether the contract was of the kind dealt with in *Highley v. Phillips*, 176 Md. 463, and so to be interpreted and construed by the court alone or whether the rule of *Keyser v. Weintraub*, 157 Md. 437, should have been followed—there it was held that when a written instrument is on its face so ambiguous as to necessitate the production of evidence outside the instrument to determine the real contract between the parties and that evidence is conflicting, there is presented a mixed question of law and fact which should be submitted to the jury with the proper instructions. See *Williston on Contracts*, Rev. Ed., Vol. 3, Sec. 616. It has been held that where issues of fact are submitted to the jury for a special verdict, the judgment entered thereon is the conclusion by the court of the legal meaning of the contract. See annotation in 65 A. L. R. 648 and cases therein cited.

The luggage company's contention that the issues submitted to the jury were inconsistent and conflicting

and, so, confusing, likewise requires the short answer that it did not object to any of the first five issues, and that the jury answered in its favor issues six and seven, the only two to which it did object. General Rules of Practice and Procedure, Part Three, Sec. III, Rule 7 (a) provides that the court in its discretion may require a special verdict in the form of a written finding upon each issue of fact. It continues: "The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand, the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict." Subsection (b) of Rule 7 provides that: "Upon appeal error may be assigned as to the submission of issues or as to any explanation and instructions of the court, or as to any refusal of the court to submit issues upon demand, only in accordance with Rule 6, subsections (c) and (d) * * *." Subsections (c) and (d) of Rule 6 require that before the jury retires, objection must be made specifically to instructions given or omitted and that on appeal only such objections shall be considered by the Court of Appeals. It is apparent that the luggage company may not now complain for the first time of the five issues which were decisive in the case. In any event, we think that the issues were not inconsistent and conflicting so as to confuse the jury. The luggage company's argument to the contrary is based on the assumption that the contract meant what it claims it meant and nothing else, that the contractor failed to complete the contract according to this version and that, therefore, it must be entitled to its expenses thereby caused. This argument disregards

the fact that the evidence permitted the jury (which, by agreement, had visited the site) to find, as seemingly they did, that while the luggage company's version of the contract was the correct paper version, yet the contractor fully performed all the work required under his version and was justified in refusing to complete the balance of the work, which was done later by Arbutus. The jury found the contractor was entitled to precisely 66⅔% of the contract price of $4,778.00, or $3,185.32. The contractor testified he had moved 400 cubic yards of earth a day for eighteen days, or 7,200 cubic yards in performing fully his version of the contract, although there was testimony that 300 cubic yards a day—or 5,400 cubic yards—would have been more nearly correct. There was further testimony that Arbutus moved 4,200 cubic yards in performing the work not done by the contractor so that the excavation would conform to the luggage company's version of what was to be done. Thus, the total earth moved could have been found to be from 9,600 cubic yards to 11,400 cubic yards, and the number of cubic yards moved by the contractor to be some two-thirds of the total. It may well be that the jury arrived at the answer to issue number five by acting on the facts which have just been recited. Such a finding would have been justified by the evidence before it. It was shown that the work could not be done according to the luggage company's plan on the railroad portion of the property as, has been noted, it is admitted that the luggage company did not either have title to or an easement in the City playground property and there was flat contradiction of the luggage company's claim of oral permission by the City (whatever that would have been worth) to grade the slope as the company wanted. It was shown that Section 2223 of the Baltimore City Building Code provides that if any grade is lowered below the surface or ground level of the adjoining property, "the new grade shall slope upon an angle not less than the angle of repose of the material, but never steeper than 1 foot

vertical to 2 feet horizontal, *to meet the grade of the adjoining property at the line,* or a retaining wall in accordance with Paragraph 4992, shall be built entirely on the ground of the owner causing the grading * * *" (emphasis supplied) and that the architect testified that the vice-president of the luggage company had told him to draw the plan as he drew it and said: "When he asked me to draw this I mentioned the slope and told him to wait a while, this may not be exactly right. He said, 'You go ahead and draw it that way; it is not only my responsibility but I have permission to go ahead and slope that'."

The answer to issue number four, as to what expenses the luggage company incurred to complete the contract, to which the jury answered $125.00, can be read to indicate that the jury found sufficient basis for the different versions of the parties to make it fair that each should pay one-half of the additional fee to the architect, incurred to determine what had to be done to complete the part of the contract the jury found the contractor justified in refusing to complete. Issue number six, in which the jury found that the luggage company did not delay work on the contract, would thus be entirely consistent with their prior determinations, that there had been no delay in that part of the undertaking that the contractor was legally obligated to perform.

We think that the trial court did not err in reading the jury's answers to the issues as the judgment rendered indicates it read them. In *Weiss v. Northern Dredge and Dock Co.,* 155 Md. 351, at p. 360, it was held that if there is partial performance of an express contract, generally the plaintiff may not recover, but "* * * that rule is subject to the qualification that where the plaintiff's failure to perform was occasioned by some default, neglect or wrongful act of the defendant, he may recover in general assumpsit for the work actually done, and the defendant cannot set up the special contract to defeat him." The contractor in the case before us included in his declaration a *quantum meruit* count.

See, too, *McLaughlin v. Reinhart,* 54 Md. 71, 81. In *Hammaker v. Schleigh,* 157 Md. 652, 668, 669, it was said that: "In a building contract, when the plaintiff, in good faith, performs all that the contract requires, although not at the time or in the manner required, but substantially as agreed, except in respect to those things which he is prevented from performing through the breach or default of the owner, the plaintiff is entitled, when the owner has received the fruits of plaintiff's work, material, and labor, to recover, since full performance has failed in those things which are not of the essence of the contract, and since otherwise there would be a forfeiture of the plaintiff's beneficial work, labor, and material, to the unjust enrichment of the owner." See *Evergreen Amusement Corp. v. Milstead,* 206 Md. 610, 621.

Here, in the case before us, the luggage company, knowing that it had no title to the lands it intended to use for the accommodation of the slopes in question, nor an easement to so use some of those lands, nevertheless planned to use them on the theory that permission would be obtained. At the time it demanded that the contractor go on the adjoining properties and excavate and move earth, it had not obtained the right to have him do so and his doing so would have constituted a trespass. The luggage company did not provide the contractor with adequate assurances of protection against the consequences of those acts, or so the jury could have found under the proper instructions of the court on the point. The contractor was therefore justified in refusing to perform acts which would have been illegal. Impossibility of performance may occur in law where the promisor has not deliberately agreed to do an illegal act and the law at the time performance is required forbids its doing. The strict rule of impossibility has undergone relaxation. As Restatement, *Contracts,* Sec. 454 puts it: "In the Restatement of this Subject impossibility means not only strict impossibility but impracticability because of extreme and unreasonable difficulty, expense, injury or

loss involved." See *Wischhusen v. Spirits Co.,* 163 Md. 565; and see *McLaughlin v. Reinhart,* 54 Md. 71, 81, *supra.* See, too, *Williston,* work cited, Chap. 58, Sec. 1933, where the author says: "It may also happen that parties know all the facts, but erroneously believe known difficulties can be removed. Such an agreement will generally be made on the assumption that the difficulties are not insuperable and if they prove to be so (not merely because of a promisor's subjective incapacity), there will be no liability." The rule should not be stricter where one party intended to remove the illegal barrier to the performance of the contract but did not do so and the other party did not contemplate the doing of illegal acts.

We think then that the court rightly reflected in its judgment the jury's apparent finding that the contractor was justified in refusing to work outside of the luggage company's property lines, either on the ground that it was illegal to do it or because no reasonable assurance was given to indemnify him against the results of his illegal acts.

We find no prejudicial error in the way that the case was submitted to the jury or in the judgment entered by the court on the verdict of the jury.

We turn, then, to the procedural point and conclude that the motion of the appellee to dismiss the appeal because it came too late must be granted. We have fully discussed the merits of the appellant's claims and thoroughly reviewed its contentions to see if there was error, because we were unwilling to dismiss the appeal under the circumstances of the case without so doing. The record makes it clear that the trial court led counsel to believe on January 26 that he was entering a judgment *nisi* on the jury's verdict and that he showed them then an informal written calculation as to the amount of the judgment on which were written the words "judgment *nisi*", and permitted them to copy it, but that after counsel had left his chambers, he directed the clerk to enter a final judgment and that this fact was not communicated to counsel by either the judge or the clerk.

It is clear also that appellant's counsel believed that he had three days from the entry of the supposed judgment *nisi* in which to make a motion for a new trial or a judgment N.O.V., and thirty days from the determination of that motion in which to appeal, and that this was what led to the withholding of appeal until after the court had ruled on the motion.

Our conclusion that the judgment entered was a final judgment, and properly so, results from the words used in the rules and the meaning the decisions have said the words have. General Rules of Practice and Procedure, Part Three, (the rules applicable to law only) Sec. III, Rule 7 (a) provides that: "The court in its discretion may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact * * * Upon the return of the special verdict of the jury, the court shall direct the entry of the appropriate judgment in accordance with this rule." Paragraph (b) of Rule 7 is as follows: *"Appeal.* Upon appeal error may be assigned as to the submission of issues, or as to any explanation and instructions of the court, or as to any refusal of the court to submit issues upon demand, only in accordance with Rule 6, subsections (c) and (d); but any express or implied findings by the court, and the judgment directed by it may be reviewed as provided in Rule 9, subsection (c)." Rule 9, referred to in concluding lines of Rule 7, deals with trials by the court. Subsection (c) thereof provides: "When a proceeding has been so tried by the court, an appeal from the judgment, if allowed by law, may be taken according to the practice in equity." In *Freeman on Judgments,* 5th Ed., Vol. 1, p. 5, it is said: "The use of the term 'judgment' ordinarily implies a final judgment. As defined by codes and statutes a judgment is the final determination of the rights of parties in an action or proceeding." This Court has made the same holding. *Hodgson v. Phippin,* 159 Md. 97, 101, decided that in the statutory provision that "all judgments on a verdict shall carry interest from the date of rendition of such ver-

dict", the word judgment meant a "final judgment". In *State v. Ramsburg,* 43 Md. 325, 333, the Court said that a judgment is a fiat or sentence of the law determining the matter in controversy. In *Carozza v. Brannan,* 186 Md. 123, 127, it was held, in effect, that the judgment which the statute directs the court to enter in a case tried by the court alone, is the final judgment from which the appeal is taken. *Clauss v. Board of Education,* 181 Md. 513, noted that there, in a case tried by the court, the appeal was from the verdict of the court, the appellant not having waited until the court entered a judgment, and that this was error. In *Maryland Lumber Co. v. Legum,* 197 Md. 483, after a trial without a jury, the court entered a judgment for the appellee on July 12. On July 14, appellant filed a motion for judgment N.O.V. or, in the alternative, for a new trial. The motion was denied on September 29, and on October 26, appellant filed an order of appeal. This Court held that the appeal must be dismissed since in a case tried by the court without a jury, a motion for a new trial, filed after the entry of judgment, does not suspend the running of the thirty day period within which an appeal must be taken, and that the period dates from the entry of judgment and not from the date of the ruling on a motion for a new trial. In *Lichtenberg v. Joyce,* 183 Md. 689, issues were submitted to the jury and answered by them on January 13. The docket entries disclose that no judgment *nisi* was entered on the special verdict. On January 20, a judgment was entered in favor of the appellee. An appeal was duly noted and heard by this Court after a motion in arrest of judgment had been denied below. It was held that under the rules, the trial court had authority to enter a judgment that included interest after a special verdict of the jury which did not find as to interest, and that such a judgment was properly before this Court and reviewable in the same way as the judgment in a case tried by a court without a jury. The earlier cases make it clear that the entry of a judgment *nisi* was not a prerequisite to the entry of a final judg-

ment. It was so held in *Frostburg v. Tiddy,* 63 Md. 514. See also *Stern v. Bennington,* 100 Md. 344, 347. In *Hodgson v. Phippin,* 159 Md. 97, *supra,* the Court said that a judgment *nisi* was no more than a rule or order to show cause why a judgment should not be entered. In *Truett v. Legg,* 32 Md. 147, it was held that after verdict, plaintiff was entitled to a judgment *nisi causa* if he moved therefor. In that case, the plaintiff had made no such motion and it was held that the verdict continued as such and final judgment would not be extended until the court so ordered.

It is clear, too, that the appellant was not entitled as a matter of law to rely on the statement of the judge that he was going to enter a judgment *nisi.* As we have pointed out, the rules and the decisions show that a final judgment is contemplated by the rules after a special verdict and that in such case a judgment *nisi* has no place. This is neither startling nor unusual. The situation is the same where the court sits without a jury. *Maryland Lumber Co. v. Legum, supra,* 197 Md. 483; *Hayes v. State,* 141 Md. 280. Before the passage of Chapter 356 of the Acts of 1922 (now a part of Rule 2 of the Rules and Regulations Respecting Appeals), the rule was the same where issues went from the Orphans' Court to a court of law for trial. Then, in such case, as it is now, the appeal was from the determination of the issues (see *Syfer v. Dolby,* 182 Md. 139, 152) and the filing of a motion for a new trial or a judgment N.O.V. did not toll the time in which an appeal must be noted (although now it does under Rule 2, *supra*). This was expressly held in 1918 in *Kamps v. Alexander,* 133 Md. 198. See also *Schmeizl v. Schmeizl,* 184 Md. 584, 597, 598. While the trial court certainly should not have changed his mind and entered a final judgment without any notice whatsoever to counsel, particularly to counsel for the losing side, after he had indicated that he was about to enter a judgment *nisi,* nevertheless, the appellant and its counsel were not entitled, as of right, to rely entirely on the judge's indicated purpose. It is set-

tled that a party to litigation, over whom the court has obtained jurisdiction, is charged with the duty of keeping aware of what actually occurs in the case and is affected with notice of all subsequent proceedings and that his actual knowledge is immaterial. *Merrill on Notice,* Vol. 3, Sec. 1119. The author there says: "In view of this doctrine of the notoriety of subsequent proceedings, the clerk is under no duty to keep either party informed of proceedings or rules of court. * * * A plaintiff is entitled to no special notification of the action of the court in dismissing the case on the merits or for want of prosecution. * * * Where a decision has been taken under advisement, judgment may be entered without notice. The same rule applies to the entry of final judgment after the disposition of motion for a new trial. * * * Upon the principle we have been discussing depends the rule that the time for taking an appeal runs from the date a judgment is rendered and not from the moment when the defeated party became aware of it." In *Bond v. Citizens National Bank,* 65 Md. 498, the case was tried before the court without a jury. The matter was held *sub curia,* verdict was rendered later for the plaintiff and judgment forthwith entered thereon. The appeal was from the refusal of the trial court after the term to strike out the judgment. The motion was made on the grounds of illegality or irregularity consisting in the failure to enter the judgment in the original trial docket before entry thereof in the judgment record. After the time for appeal had expired, the motion was made to strike out the judgment. Affidavits of counsel were filed as to the want of knowledge of the fact that judgment had been entered. The Court said there were two questions: (1) whether the judgment was legally entered; and (2) whether there was any such surprise in the entry as to require the judgment to be set aside in order to secure to the defendants the right of appeal. It was held that there was no basis for holding the judgment to have been illegally entered. In dealing with the second point, the Court referred to the surprise of find-

ing, too late, the judgment in the judgment docket after not seeing it in the trial docket and the consequent loss of the right to appeal from the judgment, and said: "This, as a ground for striking out the judgment, is wholly untenable. The defendant's attorney could have easily learned of the entry of the judgment by examination of the record, or by inquiry of the clerk. It does not appear that he did either; though he says he did examine the original trial docket and found no entry of the judgment."

The appellee, without prejudice to or waiver of any of his rights, particularly the right to move to dismiss the appeal, agreed that the trial court should order the docket entries to be altered to show the entry of a judgment *nisi* on January 26 and of an absolute judgment on March 11. The court agreed that he would order the amendments, in an effort to avoid prejudicing the right of the luggage company to appeal, even though he told counsel for both sides that he had intended on January 26 that a final judgment be entered. The dockets were changed after the appeal had been taken and more than thirty days after the judgment had been entered. None of the grounds that give the lower court jurisdiction over a judgment after thirty days from its entry was alleged or is present. In effect, the judge was attempting to extend the time for appeal which, of course, he could not do. Thus, although the docket mechanically has been altered, the appellant is in the same legal position as it was on the day the appeal was entered on March 26, 1955. This was more than thirty days after the entry of the final judgment on January 26, and the luggage company at that time had no right of appeal.

The necessity of dismissing the appeal under the circumstances of the case arouses us to the need for consideration by the Rules Committee of the desirability and feasibility of making uniform the new trial and appeal procedures in ordinary jury verdicts, special jury verdicts, trials by the court, the determination of issues sent from the Orphans' Court and the equity courts and in-

quisitions in condemnation cases. Perhaps the Federal practice, whereby a specified time after the entry of any judgment is given for motions as to the judgment and the time for appeal runs from the determination of a timely filed motion, would serve best. In any case, we shall consider with care and interest the recommendations of the Committee.

*Appeal dismissed, with costs.*