## MARYLAND METALS, INC. *v.* ROY HARBAUGH
### ET AL.

[No. 96, September Term, 1976.]

*Decided November 8, 1976.*

The cause was argued before GILBERT, C. J., and MORTON and MASON, JJ.

*William P. Young, Jr.,* for appellant.

*John H. Urner,* with whom were *Byron, Moylan & Urner* on the brief, for appellees.

GILBERT, C. J., delivered the opinion of the Court.

Properly before us, this case would have presented the interesting question of whether the appellant, Maryland

Metals, Inc., "is engaged in the ' . . . recycling of automotive components' " or operates a "junkyard" as that term is defined by Washington County Zoning Ordinance, art. 28, § 28.35. The issue, however, is not before us for the reasons stated *infra*.

In 1973, Washington County adopted a zoning ordinance. One effect of the ordinance was to place the business of the appellant in a residential area. Thus, the appellant's business was, by operation of law, converted into a non-conforming use. Appellant continued operation of its "junkyard." [1]

Desirous of expanding its operation "by the installation of an automatic shredding plant and motor breaking machine," the appellant made application on October 3, 1974, to the Board of Zoning Appeals for permission to do so. The matter was heard by the Board in late October 1974, and the application was denied on November 27, 1974, on the basis that the zoning ordinance proscribed the expansion of a "junkyard," notwithstanding the Board's finding ". . . [t]hat the proposed additions would greatly facilitate recycling of automotive components by breaking down metals as demanded by the market, resulting in a more efficient, less wasteful operation."

Disappointed by the Board's denial, the appellant sought relief in the Circuit Court for Washington County in the form of an appeal. In that tribunal, the appellant met with no more success than it had before the Board. The judge of the circuit court heard argument, viewed the property, and later wrote an opinion affirming the Board. The opinion and order thereon was filed on November 5, 1975. Patently,

[1]. While the appellant objects to the application of the word "junkyard" to its operation, we note that in October 1973, a letter to the appellant from the Washington County Planning and Zoning Commission contained the following sentence:

"Your business, designated a junkyard and located at 449 Antietam Drive, is in a Residential, Suburban District and is a non-conforming use."

No objection, at that time, seems to have been interposed by appellant to its business being characterized as a "junkyard."

under Md. Rule 1012 a,[2] the appellant had thirty days from November 5, 1975, to appeal to this Court. No appeal within that time frame was noted, however.

On December 19, 1975, two full weeks after the expiration of the time in which an appeal could be properly noted, the appellant, purportedly pursuant to Md. Rule 625 a, filed a "Motion to Set Aside Judgment." The appellant contended, in the "Motion" that, at the hearing of October 24, 1975, he had orally requested permission to take additional testimony, but that the hearing judge ". . . did not deny . . . [appellant's] motion during the hearing and its [the court's] order does not dispose of the [oral] motion." Appellant further requested the hearing court ". . . to exercise its authority under . . . Rule 625 a and set aside . . ." the judgment affirming the Board on the ground that "[t]he Court failed to furnish the . . . [appellant's] attorney with a copy of its opinion and order, contrary to the long-established rule in this County that the Court furnishes the opinion to attorneys for each side." Appellant charged that the ". . . failure to furnish a copy to [appellant's] counsel was a 'mistake or irregularity' " within the meaning of those words as employed in Md. Rule 625 a.

Appellees responded that the oral motion to take additional testimony was denied orally. Appellees further asserted that the ". . . failure to furnish a copy of the Court Order to counsel of record [3] is not a 'mistake or irregularity' . . . ."

The hearing judge then passed an order dated January 21, 1976, and filed the next day, in which it recited:

> "WHEREAS this Court handed down a decision in this case on November 5, 1975 and

---

2. The Rule provides:

"Whenever an appeal to this Court is permitted by law, the order for appeal shall be filed within thirty days from the date of the judgment appealed from except as provided in sections c. and d. of this Rule."

Neither § c., which concerns appeals from Orphans' Court, nor § d., criminal appeals after a denial of a motion for a new trial, are here applicable.

3. From the use of the phrase "Counsel of record," we infer that neither side received a copy of the court's order from the court itself.

WHEREAS through an office error, a copy of the decision was not mailed as is customarily done in this County, and

WHEREAS, time for appeal lapsed before counsel in the case had learned of the decision,

NOW, THEREFORE, at the request of the petitioner, the plaintiff, this Court hereby strikes the order of November 5, 1975, and will hand down the same order as of this date for the purpose of the petitioner to appeal (if this power still remains in this Court)." [4]

An appeal was then noted to this Court within thirty days of the January order.

The appellees have moved in their brief, under Md. Rule 1036 d, to dismiss the appeal as not timely. Md. Rule 1035 b 3.

We infer from the hearing judge's use of the words ". . . if this power still remains in this Court" that the judge had reservations about his authority to grant the motion. Both *Pumphrey v. Grapes*, 215 Md. 573, 138 A. 2d 916 (1958) and *Baltimore Luggage Co. v. Ligon*, 208 Md. 406, 118 A. 2d 665 (1955) indicate that the court did not possess the power it exercised.

In *Pumphrey, supra*, a trial judge granted a judgment *N.O.V.* and filed an order with the court clerk. He also supplied the clerk with copies of his order for counsel. One attorney did not receive the copy intended for him and did not learn that the order had been filed until after the appeal time had expired. In affirming the lower court's denial of that counsel's motion to strike out the judgment on the basis of Rule 625 a, the court said:

"In the absence of a general or local rule of court, it is almost universally held that there is no requirement that notice be given. . . . *The obligation to follow and consult the docket rests*

---

4. The question of the alleged oral motion to take additional testimony was not answered by the hearing judge nor was that issue raised before us. We deem it to have been abandoned.

*upon counsel, who are charged with notice. . . .* It is not shown that there is any applicable local rule in effect in Howard County. The most that can be claimed is that under the local practice it is customary to supply copies of opinions and orders to counsel. The deputy clerk testified that he usually did this by 'Handing it to them in person. Rarely, I go out and deliver them. . . .' There was no practice of mailing copies or giving formal notice. . . . We think there was no obligation upon the clerk to serve the copy, and the failure of counsel to learn of the court's action and the entry of the judgment is not chargeable to him [the clerk] under the circumstances." 215 Md. at 576-77, 138 A. 2d at 918 (Emphasis supplied). (Citations omitted).

A semantic problem exists in applying the above language to the instant case. In his order, the hearing judge vacated the November 5, 1975, order because "... a copy of the decision was not mailed *as is customarily done in this county.*" (Emphasis supplied). The *Pumphrey* Court held that "[t]he most that can be claimed is that *under the local practice it is customary* to supply copies of opinions and orders to counsel." 215 Md. at 576, 138 A. 2d at 918 (Emphasis supplied). In *Pumphrey,* the Court had before it testimony showing the procedure followed by the clerk in delivering opinions and orders. The Court noted that "[t]here was no practice of mailing copies or giving formal notice." In the case presently before us, no testimony was taken on the motion to set aside the judgment. We are left with the motion, the answer thereto, and the hearing judge's statement ". . . the decision was not mailed as is customarily done in this County."

We glean from *Pumphrey* that custom alone falls short of establishing a "mistake or irregularity" under Rule 625 a unless there is a local or general rule authorizing or sanctioning the "custom." [5]

---

[5]. The Fourth Judicial Circuit, of which Washington County is a part, has no rules prescribing a procedure for distributing copies of court orders or opinions to counsel.

The Court, in *Baltimore Luggage, supra,* went even further. There it said that notwithstanding a trial judge's statement that he "... was going to enter a judgment *nisi,*" 208 Md. at 421, 118 A. 2d at 673, counsel were "... not entitled, as of right, to rely entirely on the judge's indicated purpose." 208 Md. at 421, 118 A. 2d at 673.

The Court stated:

> "It is settled that a party to litigation, over whom the court has obtained jurisdiction, is charged with the duty of keeping aware of what actually occurs in the case and is affected with notice of all subsequent proceedings and that his actual knowledge is immaterial." 208 Md. at 421-22, 118 A. 2d at 673

In *Baltimore Luggage, supra,* the trial court, in order to accommodate the appellant, amended the docket in an effort to avoid prejudicing the right of the luggage company to appeal, which right had expired because of counsel's reliance upon the Court's statement that it would enter the order *nisi,* and counsel's failure to observe that the court actually entered a final judgment.

When the matter was decided by the Court of Appeals, it pointed out, rather strongly we think, that:

> "... [T]he judge was attempting to extend the time for appeal which, of course, he could not do. Thus, although the docket mechanically has been altered, the appellant is in the same legal position as it was on the day the appeal was entered . . . . [That] was more than thirty days after the entry of the final judgment . . . and the luggage company at that time had no right of appeal." 208 Md. at 423, 118 A. 2d at 674.

In the practice of law, a lawyer is charged with the responsibility of knowing what is entered upon the dockets, from time to time, in the case in which he is counsel. It is his duty to follow the dockets so as to keep himself abreast of

the happenings in his case, and absent a local or general rule entitling counsel to rely upon the clerk for notice of particular entries on the docket, counsel will not be heard to exclaim that he was unaware of an entry. Put in another more graphic way, the buck stops with the attorney's appearance as counsel of record.

Lest there be any misconception that an attorney's ignorance of docket entries is not a "mistake or irregularity" in the Md. Rule 625 a sense, the Court of Appeals, in a host of cases, has laid that idea to rest. *Cohen v. Investors Funding Corp.*, 267 Md. 537, 541, 298 A. 2d 154, 156 (1973); *Ventresca v. Weaver Bros.*, 266 Md. 398, 407, 292 A. 2d 656, 661 (1972); *Maggin v. Stevens*, 266 Md. 14, 18, 291 A. 2d 440, 442 (1972); *Penn Central v. Buffalo Spring*, 260 Md. 576, 582, 273 A. 2d 97, 100 (1971); *Mutual Benefit Society v. Haywood*, 257 Md. 538, 541, 263 A. 2d 868, 870 (1970); *Grantham v. Prince George's Co.*, 251 Md. 28, 36, 246 A. 2d 548, 552 (1968); *Tasea Investment Corp. v. Dale*, 222 Md. 474, 479, 160 A. 2d 920, 923 (1960); *Pumphrey v. Grapes, supra*; and *Baltimore Luggage v. Ligon, supra.*

As we see it, appellant's counsel had no right, in the instant case, to rely upon a supposed custom of the court in mailing copies of orders to counsel. One of the very purposes of the rule relative to counsel's duty to follow the docket is to assure counsel that neither he nor his client will be misled or shortchanged by the failure of some court, or court employee, to follow custom as distinguished from a rule of court.

Having decided that the court's failure to notify counsel of its order was neither a "mistake" nor an "irregularity," it logically follows that the court, under the circumstances of this case, was without authority to strike the judgment and then enter a new judgment so as to make an otherwise untimely appeal timely. The rationale of the *Baltimore Luggage* case clearly is to the contrary.

We hold the appeal entered in the case *sub judice* was untimely and must be dismissed.

If it be of any solace to the appellant, we observe that the

Washington County Zoning ordinance provides in pertinent part:

> "28.35 JUNK YARD: Any area where waste, discarded or salvaged materials are bought, sold, exchanged, baled, parked, stored, disassembled or handled, including auto wrecking yards, house wrecking yards, used lumber yards, and places or yards for storage of salvaged house wrecking and structural steel materials and equipment, but not including areas where such uses are conducted entirely within a completely enclosed building and not including pawnshops and establishments for the sale, purchase or storage of used furniture and household equipment, used cars in operable condition, salvaged machinery and the processing of used, discarded or salvaged material as part of manufacturing operations."

Our review of the record convinces us that the evidence establishes that from the date of the adoption of the county zoning ordinance to the time of hearing before the Board, the county considered the appellant's business as a junkyard. The record shows that in the written communications by the county to the appellant, the county invariably referred to the appellant's business with such characterization. If appellant, prior to the instant case, sought to alter that classification, there is nothing in the record so indicating.

The testimony further demonstrated that while the business currently demolishes and processes sixty to sixty-five cars per day, allowance of the expansion will permit an increase in that number of cars to between two hundred and two hundred fifty cars per day, an increase of at least one hundred forty cars per day.

There was conflicting evidence before the Board as to whether the appellant's business was that of manufacturing and hence without the definition of junkyard as defined by the ordinance or a junkyard and business clearly within the definitions. The Board decided that the business of the

appellant was a junkyard. We are persuaded that the evidence was such as to make the Board's finding fairly debatable. Thus, since it was fairly debatable, the courts are not at liberty to substitute their judgment on the evidence for the judgment of the Board. We think the hearing court was correct when it affirmed the Board. *Luxmanor Citizens v. Burkart,* 266 Md. 631, 296 A. 2d 403 (1972); *Neuman v. City of Baltimore,* 23 Md. App. 13, 325 A. 2d 146 (1974).

*Appeal dismissed.*
*Costs to be paid by appellant.*