The J. M. CLEMINSHAW COMPANY

v.

CITY OF NORWICH.

Civ. A. No. H76–321.

United States District Court,
D. Connecticut.

Dec. 1, 1981.

## RULING ON PLAINTIFF'S RENEWED MOTION FOR SANCTIONS AND ORDER

JOSÉ A. CABRANES, District Judge:

### INTRODUCTION

This case illustrates the need for federal trial courts diligently to apply established techniques of case management. Defendant has failed to answer plaintiff's discovery requests and has disobeyed the discovery orders of the court. As a result, what began as a relatively uncomplicated contract action, claiming damages of less than $70,000, has now been pending for more than five years. The parties, moreover, have still not filed a proposed final pre-trial order, as contemplated by the court's pre-trial procedures, or otherwise indicated that the matter is ready for trial.

In response to defendant's dilatory conduct, plaintiff has moved under Rule 37, Fed.R.Civ.P., for the imposition of sanctions. In particular, plaintiff seeks to have defendant's counterclaim stricken or a judgment by default entered. Plaintiff also requests reimbursement of the expenses and attorney's fees which it incurred in seeking to compel discovery from defendant. The threshold issue is whether it is appropriate, under Rule 37, to grant to plaintiff its requested relief.

This case also presents unusual circumstances which raise questions concerning the scope of the court's authority to impose sanctions under Rule 37. The record indicates that defendant's failures to provide discovery are due to a lack of diligence by its counsel. As its litigation costs, plaintiff has claimed only the modest sum of $150. Rule 37 specifically authorizes the court to hold counsel personally liable for those costs. Where the claim for costs is very low and there is a long history of unjustified delay, the question arises whether the court may assess an additional sanction, such as a fine payable to the court, in order more fully to vindicate the interests of the system for the administration of justice.

Where a party has failed to provide discovery, Rule 37, Fed.R.Civ.P., authorizes the court both to impose sanctions on the disobedient party and to require that party, or its attorney, to pay the expenses and attorney's fees which the opposing party incurred in litigating its motion under Rule 37. An analysis of the sanctions which are specifically enumerated in Rule 37 suggests that there may be a gap in the scheme of explicitly authorized penalties.

Rules 37(b) and 37(d) both authorize the imposition of sanctions.[1] Rule 37(b) enumerates several sanctions which the court may impose. These include an order that certain facts be taken to be established, Rule 37(b)(2)(A); an order preventing the disobedient party from supporting or opposing designated claims or defenses, Rule 37(b)(2)(B); and an order striking certain pleadings, or entering dismissal or default, Rule 37(b)(2)(C). Rule 37(d) then incorporates by reference each of these three enumerated sanctions. The effect of each of these sanctions is to impede the ability of the disobedient party to litigate the merits of its action.

■ The only monetary penalty specifically authorized by Rule 37 is an award of reasonable expenses, including attorney's fees, to the party which prevails on a Rule 37 motion. Under both Rule 37(b) and Rule 37(d), the court is to make such an award unless the failure to provide discovery was "substantially justified." In essentially identical language, Rules 37(b) and 37(d)

---

1. On the relationship between Rules 37(b) and 37(d), *see* note 3, *infra*.

provide that the award of fees and expenses may be made "in lieu of" or "in addition to" any of the sanctions authorized by Rule 37. If an attorney is responsible for the failure to provide discovery, Rules 37(b) and 37(d) permit the court to hold that attorney personally liable for the award of fees and expenses. In determining an appropriate award of fees and expenses, the court seeks, in the first instance, to compensate the prevailing party for its costs. *See* 4A *Moore's Federal Practice* ¶ 37.03[2.–7] (1981 ed.).

The gap in the enforcement scheme of Rule 37 becomes apparent in circumstances like those of the present case. Here, the defendant has engaged in a prolonged and unjustified failure to provide discovery. In addition, it has failed to obey the discovery orders of the court. Those failures are the fault of defendant's counsel. At the same time, plaintiff has claimed a very small sum in fees and expenses. These facts create a dilemma. To impose on defendant one of the sanctions enumerated in Rule 37(b) would be to impair defendant's ability to litigate the merits of its case, and thus would be to punish defendant for the derelictions of its counsel. However, to order defendant's counsel to pay only plaintiff's fees and expenses would be to compensate plaintiff without adequately punishing the offending parties. The question, then, is whether Rule 37 permits the court to fashion a sanction which more adequately achieves both the goals of compensation and of punishment.

In addition to the enumerated sanctions, Rules 37(b) and 37(d) permit the court to "make such orders in regard to the failure [to provide discovery] as are just[.]" The narrower question in this case, therefore, is whether it would be "just," within the meaning of Rule 37, and appropriate under other applicable rules and principles, to impose upon defendant's counsel a fine which is payable to the court, and the severity of which is based on considerations of court costs and general deterrence.

## BACKGROUND

On March 4, 1980, plaintiff's counsel mailed to all counsel of record a copy of Plaintiff's Interrogatories—Second Set ("Interrogatories") and Plaintiff's Request for Production of Documents ("Request for Production"). *See* Certification of Attorney O, Interrogatories at 6; Request for Production at 2. Those discovery requests were filed with the court on March 5, 1980. Pursuant to Rule 33(a), Fed.R.Civ.P., defendant was required to answer or object to the Interrogatories within thirty days of their service; pursuant to Rule 34(b), Fed. R.Civ.P., it was required to serve a written response to the Request for Production within thirty days of its service.

As of May 27, 1981, more than one year after plaintiff's filing of its discovery requests, defendant had not responded to either the Interrogatories or the Request for Production. On that date, plaintiff moved, pursuant to Rule 37(a), Fed.R.Civ.P., for "an order compelling defendant to respond fully to such discovery requests within two weeks from the date of such order, and awarding expenses in regard to this motion and order thereon." Plaintiff's Motion to Compel Discovery ("Motion to Compel") at 1 (filed May 27, 1981). In its Motion to Compel, plaintiff alleged that defendant "ha[d] not sought any time extension, ha[d] not complied with such discovery, and ha[d] offered no excuse for its delays." *Id.* Plaintiff also sought payment of the costs it had incurred in litigating the motion. The Motion to Compel was decided by United States Magistrate F. Owen Eagan, who was acting pursuant to an order of referral which the court had entered on April 29, 1980. On June 5, 1981, Magistrate Eagan granted the Motion to Compel, thus ordering defendant both to respond to plaintiff's discovery requests and to pay to plaintiff the expenses which it had incurred in litigating that motion. Nothing in the record of this case indicates that defendant or its counsel have complied with the order awarding expenses.

On June 9, 1981, four days after Magistrate Eagan had granted its Motion

to Compel, plaintiff filed a motion under Rule 37(d), Fed.R.Civ.P. In that motion, which was intended "to clarify or to supplement" the earlier Motion to Compel, plaintiff noted defendant's failure to comply with plaintiff's discovery requests under Rules 33 and 34, and moved for "such orders as are just, together with expenses." *See* Plaintiff's Motion Under Rule 37(d) at 1 (filed June 9, 1981).[2]

By the terms of the Motion to Compel, which had been granted on June 5, 1981, defendant was required to respond to plaintiff's discovery requests by no later than June 19, 1981. As of July 21, 1981, more than one month after the deadline for serving its responses, defendant had still not complied with the Magistrate's order. On that date, plaintiff filed a second Rule 37(d) motion for "such orders as are just (together with expenses), especially those sanctions under [Rule 37(b)(2)(C)]" which would permit rendering a default judgment against defendant or at the very least striking its counterclaim." Plaintiff's Motion for Sanctions Under Rule 37(d) ("Motion for Sanctions") at 2 (filed July 21, 1981).[3] In this motion, plaintiff's counsel claimed $150 in fees and expenses. Motion for Sanctions ¶ 4.

Despite the July 21, 1981 filing of the Motion for Sanctions, and the fact that the Magistrate's order of June 5, 1981 required compliance by June 19, 1981, defendant did not comply with the Magistrate's order until September 1981. In a handwritten stipulation filed with the court on August 27, 1981, counsel for the parties agreed that defendant would respond by no later than September 11, 1981. In an order entered on August 27, 1981, Magistrate Eagan effectively adopted the terms of that stipulation, and directed defendant to respond to plaintiff's discovery requests, which had then been pending for almost eighteen months, by no later than September 11, 1981.

**2.** Rule 37(a), Fed.R.Civ.P., authorizes the court to compel a party to provide discovery. Rule 37(d) authorizes the court to impose sanctions on a party that has completely failed to provide such discovery. Thus, where one party fails to offer any response to appropriately filed interrogatories or requests for the production of documents, the party seeking discovery may proceed in either of two ways. First, that party may move under Rule 37(a) for a court order compelling discovery. *See* 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2285 (1970 ed.). Alternatively, the party seeking discovery may move directly for the imposition of sanctions under Rule 37(d), which "allows the court in which the action is pending [footnote omitted], on motion, to impose a variety of sanctions on a party who ... has failed to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or has failed to serve a written response to a request for inspection under Rule 34, after proper service of the request. No court order is required to bring Rule 37(d) into play." *Id.* § 2291 at 807.

Rule 37(d) may not be invoked for "anything less than a serious or total failure to respond to interrogatories" or requests for production. *Id.* § 2291 at 809. Where the party resisting discovery has responded by objecting to certain interrogatories or requests for production, or has served responses that the party seeking discovery considers to be evasive or incomplete, then "the proper remedy is to move for an order compelling answers [or production] under Rule 37(a)." 4A *Moore's Federal Practice* ¶ 37.02[3] at 37–36 (1981 ed.) (interrogatories); *id.* ¶ 37.02[4] at 37–38 (requests for production of documents).

**3.** As of July 21, 1981, the date on which plaintiff filed its Motion for Sanctions, defendant had failed either to provide any responses to plaintiff's discovery requests or to comply with the court's order of June 5, 1981 (by Magistrate Eagan) which directed that such responses be filed by no later than June 19, 1981. Thus, having secured under Rule 37(a) an order compelling discovery, plaintiff could have based its Motion for Sanctions on either Rule 37(d) or Rule 37(b), Fed.R.Civ.P. *See* 4A *Moore's Federal Practice* ¶ 37.05 at 37–100 ("Rule 37(d) deals, then, with failure to make the initial response required by the Rules[.]"); *id.* ¶ 37.-03[2.–1] at 37–55 ("Rule 37(b) relates solely to situations in which the court has made an order to provide or permit discovery [footnote omitted] and a party or its officer, director or managing agent has failed to obey it.").

Plaintiff's reliance, in the first instance, on Rule 37(d) rather than on Rule 37(b) is of no consequence. Rule 37(d) incorporates by reference, and thus authorizes the imposition of, those sanctions enumerated in Rule 37(b)(2)(A), (B), and (C). Plaintiff here has sought both to recover its costs and fees and to secure the sanctions permitted by Rule 37(b)(2)(C). Motion for Sanctions at 2. Such relief may be requested under either Rule 37(b) or Rule 37(d).

On September 10, 1981, defendant answered the Interrogatories and responded in writing to the Request for Production. On September 11, 1981, in a letter addressed to Magistrate Eagan, plaintiff's counsel argued that defendant's "interrogatory answers fail to conform to the rules, but also, more importantly, they are in part [citing specific interrogatory answers] ... *far* short of the specificity called for in the interrogatories and necessary for my proper preparation." Letter to Magistrate Eagan from Attorney O ("O Letter") at 1 (dated Sept. 11, 1981) (emphasis in the original). Because defendant allegedly "continues to break the rules," by failing to answer the Interrogatories adequately, plaintiff's counsel stated that he wished to renew the July 21, 1981 Motion for Sanctions. *Id.* Plaintiff's counsel did not contend, however, that defendant's responses to the Request for Production were, in any way, inadequate. *Id.*

Plaintiff's renewed Motion for Sanctions is now before the court. The motion, which effectively incorporates the allegations of both the original Motion for Sanctions and the Letter, states two claims. The first is that before September 10, 1981, the date on which defendant finally served responses to plaintiff's discovery requests, defendant repeatedly failed to comply with the orders of the court and Federal Rules of Civil Procedure. The second is that the responses which were served on September 10, 1981 are inadequate as a matter of law, and thus constitute a continuing failure to comply with applicable rules and court orders. On the basis of these claims, plaintiff seeks two types of relief. The first is an order either entering a default judgment against defendant or striking its counterclaim. The second is an award of the expenses which plaintiff incurred in its efforts to secure compliance with its discovery requests.

▮▮▮ The court has reviewed the record of this action, as well as the papers which both sides have submitted in connection with plaintiff's motions.[4] Upon that

---

4. The court has also considered the letters which it recently received from Attorneys O and Z. Attorney Z is a counsel of record for defendant. Attorney Z states in a letter to the court dated November 3, 1981: "I sincerely and earnestly feel that sanctions are not in order at this time and I would appreciate an opportunity to present argument against the claims of the Plaintiff made in the various motions." Letter to the Court from Attorney Z ("Z Letter of November 3, 1981") at 1–2 (received Nov. 4, 1981). Rule 37(d), by its terms, does not require a hearing of any sort before a decision by the court. Motion practice under Rule 37 "is governed to a large extent by local rules which often provide that the court may decide motions without oral argument [footnote omitted]." 4A *Moore's Federal Practice* ¶ 37.02[7] at 37–44 (1981 ed.). In the District of Connecticut, motion practice is governed by Rule 9(a), Local Rules of Civil Procedure, which creates a presumption against the court's hearing oral argument on pending motions. That Local Rule provides, in full that

[m]otions shall be submitted for determination without oral hearing, unless the Court shall otherwise order. Counsel desiring oral hearing shall file a written request showing good cause for same or before a date specified on notice from the Clerk.

Plaintiff's Motion for Sanctions was filed on July 21, 1981; Attorney Z's request for oral argument was made almost four months later.

Within this period of time, Attorney Z responded in writing to the Motion for Sanctions, and had an opportunity either to file a timely request for oral argument or to file additional written responses. In these circumstances, the court finds no good cause to hear oral argument on plaintiff's motion, and in accordance with Rule 9(a), Local Rules of Civil Procedure of this District, the court has considered the Motion for Sanctions on the basis of the entire written record of this action.

In the Z Letter of November 3, 1981, at 1, Attorney Z also stated, "... I thought the Motion for Sanctions was moot as the Plaintiff's interrorgatories [sic] have been answered and I felt that the other matters could easily be cleared up in a conference." It is "settled," however, "that eventual compliance with the rules of discovery does not preclude the imposition of sanctions." Renfrew, *Discovery Sanctions: A Judicial Perspective* ("*Discovery Sanctions*") 67 Cal.L.Rev. 264, 271 (1979). *See National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (per curiam) (affirming, pursuant to Rule 37(b)(2)(C), Fed.R.Civ.P., dismissal of action for repeated failure to provide discovery and to comply with court orders compelling discovery, despite fact that responses to interrogatories were eventually filed); *Cine Forty-Second St. Theatre v. Allied Artists* ("*Cine Forty-Second St.*"), 602 F.2d 1062, 1068

review, the court finds no basis for concluding that defendant is continuing to violate either the orders of the court or the applicable rules of procedure. Accordingly, there is no ground, at this time, for an order entering default or striking any of defendant's pleadings. The court further concludes, however, that before September 10, 1981, defendant repeatedly and without justification violated both the orders of the court and the applicable rules of civil procedure. In such circumstances, an appropriate remedy is an assessment of expenses, including attorney's fees, against counsel for the party whose conduct necessitated the court action.

█ Moreover, upon a review of the record, the court finds that defendant's past violations have been due primarily to the inaction of one of its counsel of record, Attorney S. In such circumstances, the court finds it appropriate that Attorney S assume greater liability under the court's award of expenses and attorney's fees to plaintiff, and that an additional sanction be imposed upon that attorney. Accordingly, plaintiff's renewed Motion for Sanctions is granted to this extent: Attorney S shall be liable to plaintiff for expenses and attorney's fees in the amount of $100; defendant's other counsel of record, Attorney Z, shall be liable to plaintiff for expenses and attorney's fees in the amount of $50. In addition, Attorney S shall pay to the Clerk of the Court a fine in the amount of $150.

## DISCUSSION

*Sanctions Against Defendant Under Rule 37(b)(2)(C) for Continuing Discovery Violations*

In contending that defendant continues to violate applicable discovery rules, plaintiff argues only that certain of defendant's answers to the Interrogatories are improper in form and lacking in the detail called for by the questions. *See* O Letter at 1. The court notes two facts, however. First, defendant has provided a written answer to each of the Interrogatories. *See* Answers to Plaintiff's Interrogatories—Second Set (original filed Sept. 10, 1981; verified copy filed Sept. 25, 1981). Second, in a recent letter to Magistrate Eagan, defendant's counsel represented that the Interrogatories "have been answered as directly as possible and in as detailed a manner as we can at this time." Letter to Magistrate Eagan from Z (dated Sept. 14, 1981).

Plaintiff claims that defendant continues to violate applicable rules of procedure, but alleges no insufficiency with respect to defendant's responses to the Request for Production. Moreover, defendant's counsel represents that defendant has answered the

(2d Cir. 1979); *Ohio v. Arthur Andersen & Co.*, 570 F.2d 1370, 1374 (10th Cir.), *cert. denied*, 439 U.S. 833, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978); *Dellums v. Powell*, 566 F.2d 231, 235–236 (D.C.Cir.1977); *Litton Systems, Inc. v. American Telephone and Telegraph Co.*, 91 F.R.D. 574 (S.D.N.Y.1981) (depriving prevailing plaintiff of all costs and attorneys' fees to which it would otherwise be entitled as "punishment" for delays by plaintiff's counsel in producing documents as ordered; noting that eventual decision of plaintiff's counsel to "comply with the court order and produce [the documents] .... was a substantial step in the direction of righting, though not purging, the previous wrong."). Accordingly, to the extent that defendant, through Attorney Z, opposes the Motion for Sanctions on the grounds of mootness, that argument is not persuasive. In a letter which was received by the court on November 4, 1981, Attorney O requests that [he] be given an opportunity to set forth in writing the full extent of the time spent and

fees incurred by plaintiff relating to attemps [sic] to obtain discovery compliance from defendant. Paragraphs 3 and 4 of the [M]otion [for Sanctions] only scratch the surface; and I believe itemized time bills would be more accurate. If my request is "too late," then so be it.
Letter to the court from Attorney O (received Nov. 4, 1981).
Plaintiff's Motion for Sanctions was filed on July 21, 1981. In Paragraph 4 of that Motion, counsel represented that plaintiff had incurred expenses of $150. In the several months that the Motion for Sanctions has been pending, plaintiff's counsel has had a full opportunity to explain in writing the full extent of his time spent and of the fees incurred by plaintiff. In these circumstances, plaintiff's present request is indeed, in the words of its counsel, "too late." Accordingly, the court has considered the Motion for Sanctions on the basis of the representations which counsel stated in that motion.

Interrogatories to the full extent of its present knowledge. In these circumstances, the court cannot necessarily conclude that defendant is continuing to violate the prior orders of the court or applicable rules of procedure. At this time, therefore, it would not be an appropriate exercise of the court's authority under Rule 37(d), Fed.R. Civ.P., to impose upon defendant any of the sanctions contemplated by Rule 37(b)(2)(C) and requested by plaintiff, such as an order striking any or all of defendant's pleadings or rendering a judgment by default against defendant. Accordingly, plaintiff's motion for the imposition of sanctions under Rule 37(b)(2)(C) is denied. This ruling is without prejudice to plaintiff's serving further discovery requests.

*Sanctions Against Defendant's Counsel for Past Violations: Liability for Plaintiff's Costs and Attorney's Fees*

Although the court cannot on the present record conclude that defendant continues to violate discovery rules and orders, there can be no question of defendant's long and unjustified record of past violations. Defendant has never disputed the allegations of either the Motion to Compel or the Motion for Sanctions. Indeed, "[s]ubstantially, the [d]efendant admits the allegations of the [p]laintiff's [Motion for Sanctions]." Defendant's Response to Motion for Sanctions ("Defendant's Response") ¶ 1 (filed Aug. 14, 1981). Defendant suggests only that it

would now be unjust to impose sanctions because "[t]he failure of the [d]efendant to comply with discovery orders was due to lack of diligence on the part of counsel previously handling the case." Defendant's Response ¶ 2.

Defendant's Response was filed by Attorney Z, who represents that he has only recently assumed active control of defendant's case. *See* Letter to Magistrate Eagan from Attorney Z (dated July 22, 1981) ("Z Letter of July 22, 1981"). In Defendant's Response, Attorney Z is referring, and attributing defendant's derelictions, to Attorney S, who, according to court records, had been conducting prior proceedings in this action on behalf of defendant. Court records indicate that Attorney S entered his appearance in this action on August 23, 1976. However, court records also indicate that Attorney Z entered his own appearance on August 26, 1976, and that Attorney Z's appearance has never been withdrawn. Although Attorney S may have conducted the more active representation of defendant through prior stages of the case, Attorney Z's continued appearance on the record, dating almost to the commencement of the action, imposes on Attorney Z a duty to oversee all aspects of the conduct of defendant's cases, and thus responsibility for defendant's failures of compliance.[5]

---

**5.** This duty derives from the settled principles which govern the relationship between attorney and client. It is a central canon of the legal profession that a lawyer should represent his client competently. *See* American Bar Association, *Code of Professional Responsibility* ("*ABA Code*"), Canon 6. Thus an attorney is subject to discipline for handling a legal matter without preparation adequate in the circumstances, *ABA Code*, Disciplinary Rule ("DR") 6–101(A)(2), or for neglecting a legal matter that has been entrusted to him, *ABA Code*, DR 6–101(A)(3). *See ABA Code*, Ethical Consideration 6–4 ("Having undertaken representation, a lawyer should use proper care to safeguard the interests of his client . . . . In addition to being qualified to handle a particular matter, his obligation to his client requires him to prepare adequately for and give appropriate attention to his legal work.")

This duty to prepare adequately imposes on an attorney the "responsibility to 'investigate and

prepare every phase' of his client's case[.]" *Parksville Mobile Modular, Inc. v. Fabricant*, 73 A.D.2d 595, 598, 422 N.Y.S.2d 710, 715 (2d Dept. 1979), *appeal dismissed*, 49 N.Y.2d 801 (1980), *quoting Giaramita v. Flow Master Mach. Corp.*, 234 N.Y.S.2d 817, 818 (Sup.Ct. Nass.Cty.1962). In particular, it is the duty of the attorney to keep himself informed as to the progress of his case so that he may take whatever action may be necessary to protect his client's interests. *In re Trottier*, 32 F.2d 1010, 1011 (D.Mass.1929) ("[I]t is of course the business of counsel to examine for themselves records in a case in which they are interested."); *Tarloff v. Werner*, 72 Misc.2d 26, 27, 337 N.Y. S.2d 916, 918 (Civ.Ct.Queens Cty.1972) ("It is an attorney's duty and responsibility to know the status of his client's litigation at all times[.]"); *Maryland Metals, Inc. v. Harbaugh*, 33 Md.App. 570, 575–576, 365 A.2d 600, 603 (Ct.Spec.App.1976) ("In the practice of law, a lawyer is charged with the responsibility of

■ It is undisputed that defendant failed to make timely responses to plaintiff's discovery requests. It is also undisputed that until September 10, 1981, defendant failed completely to comply with Magistrate Eagan's order compelling discovery, which was entered on June 5, 1981, and which directed that such discovery be provided by June 19, 1981. In this case, Rules 37(b) and 37(d) both come into play. Both rules authorize the court to hold defendant's counsel personally liable for the expenses and attorney's fees caused by the failures of compliance. Indeed, both Rules create a presumption in favor of such an assessment. In language which is virtually identical to that used in Rule 37(d), Rule 37(b)(2) provides in pertinent part that

[i]n lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order *or the attorney advising him* or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

(emphasis supplied).

■ The Supreme Court has recently instructed the lower federal courts that

"Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Roadway Express, Inc. v. Piper ("Roadway Express")*, 447 U.S. 752, 763–764, 100 S.Ct. 2455, 2462, 65 L.Ed.2d 488 (1980), *quoting National Hockey League v. Metropolitan Hockey Club ("National Hockey League")*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam) (brackets in *Roadway Express*). Moreover, it is clear both from the language of Rule 37 and from the cases construing that rule that counsel may be held personally liable for the expenses, including attorney's fees, caused by the failure to comply with discovery rules and orders. *Roadway Express, supra*, 447 U.S. at 763, 100 S.Ct. at 2462; *Stanziale v. First National City Bank*, 74 F.R.D. 557, 560 (S.D.N.Y.1977) (cited with approval in *Roadway Express, supra*, 447 U.S. at 763 n.10, 100 S.Ct. at 2463 n.10); *Shapiro v. Freeman*, 38 F.R.D. 308, 312–313 (S.D.N.Y.1965).

■ The award of fees and expenses is the "mildest" of the sanctions authorized by Rule 37. *Cine Forty-Second St. Theatre v. Allied Artists ("Cine Forty-Second St.")*,

knowing what is entered upon the dockets, from time to time, in the case in which he is counsel. It is his duty to follow the dockets so as to keep himself abreast of the happenings in his case .... Put in another more graphic way, the buck stops with the attorney's appearance as counsel of record."); *see generally* 7A C.J.S. Attorney and Client § 258 at 470–471 (1980 ed.).

The fact that an attorney may have engaged co-counsel to assist him in the conduct of a case does not relieve that counsel of record of his duty to supervise all aspects of the litigation. The relationship between an attorney and his client is personal. As a general rule, therefore, the rights and duties resulting from that relationship may not be assigned or delegated without the consent of all parties. *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 90 (5th Cir. 1976). If an attorney delegates any of his fiduciary duties, he may not thereby avoid responsibility for the manner in which those duties are carried out. *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 234 (2d Cir. 1977). It follows, then, that if counsel of record entrusts a legal matter to another attorney, that counsel of record is under a duty to exercise proper care in selecting the attorney and in supervising his work. *See Tormo v. Yormark*, 398 F.Supp. 1159, 1170–1171 (D.N.J.1975). (attorney who transfers his client's case to other counsel is under a duty to exercise due care to ensure that retained counsel is competent and trustworthy). Having reviewed the applicable authorities, the court concludes that this duty to supervise co-counsel includes the duty to remain aware of all acts and omissions by co-counsel which may materially affect the client's interests. In the present case, where the prolonged failure of defendant's counsel to respond to plaintiff's discovery requests or to comply with the court's order compelling discovery, has exposed defendant to sanctions pursuant to Rule 37, Fed.R.Civ.P., the omissions of Attorney Z's co-counsel have materially threatened the interests of Attorney Z's client. In these circumstances, it is appropriate to impose some liability on Attorney Z in determining the issues raised by the Motion for Sanctions.

602 F.2d 1062, 1066 (2d Cir.1979). A finding by the court that a party has engaged in willful disobedience or gross negligence is required only if a harsher sanction is to be applied. 4A *Moore's Federal Practice* ¶ 37.05 at 37–101 to 37–103 (1981 ed.) (willfulness); *Cine Forty-Second St., supra,* 602 F.2d at 1068 (gross negligence). By its terms, Rule 37 "places the burden on the disobedient party to avoid [assessment of] expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust." Advisory Committee on Civil Rules, *Note to 1970 Amendment to Rule 37(b)(2), Fed.R.Civ.P.* (1980 ed.) ("*Advisory Committee Note of 1970 to Rule 37(b)(2)*"). To make an award of costs and fees, therefore, the court need not consider the precise reasons for defendant's failures of compliance; it must only determine whether those failures were "substantially justified," within the meaning of Rule 37.

In this action, defendant offers no justification for its repeated failures to comply, and the court's review of the record reveals none. Moreover, defendant's counsel concedes that the fault lies with counsel, and not with defendant itself. *See* Defendant's Response ¶ 2. In these circumstances, the court concludes, pursuant to Rules 37(b)(2) and 37(d), Fed.R.Civ.P., that it would be appropriate and just to hold defendant's two counsel of record personally liable for the expenses, including attorney's fees, which plaintiff incurred in its efforts to secure compliance with Magistrate Eagan's discovery order of June 5, 1981 and the discovery requests filed by plaintiff many months earlier. In the Motion for Sanctions, plaintiff claims that its "expenses for [the Motion to Compel] were $50 in fees and through preparation of the [Mo-

tion for Sanctions], excluding any hearing thereon, are another $100." Motion for Sanctions ¶ 4. That claim, made more than three months ago, has never been disputed. The court finds that the sum of $150 is a just and reasonable—indeed, in these circumstances, a modest [6]—assessment to be levied against defendant's counsel of record, pursuant to Rule 37, Fed.R.Civ.P.[7]

Having carefully reviewed the record in this action, the court further finds that Attorney S is primarily at fault for defendant's repeated failures of compliance. Attorney S has been a counsel of record for defendant since the entry of his appearance on August 23, 1976. That appearance has never been withdrawn.[8] More important, court records indicate that Attorney S was defendant's primary representative both before and throughout the period in which plaintiff's discovery requests were pending. On June 15, 1977, Attorney S served defendant's responses to plaintiff's first set of interrogatories, which had been filed fully seven months earlier, on November 9, 1976. On February 5, 1980, Attorneys S and O both signed a "Plaintiff's Status Report," which stated that plaintiff "would like 60 days to resubmit its interrogatories to defenant [sic] as well as supplement them[.]" Plaintiff's Status Report ¶ 2 (filed Feb. 5, 1980). Both sides appeared at a status conference before the court, *see* Rules 16 and 26(f), Fed.R.Civ.P., on February 5, 1980. At that conference, the court ordered that all discovery in this action be completed by no later than April 15, 1980, and two days later a written order memorializing the terms of the February 5, 1980 order was entered. *See* Order of February 7, 1980 ¶ 2. Thus as early as February 5, 1980, Attorney S actually knew that he would be receiving

---

6. On the reasons for the court's assessment of only $150 for the fees and expenses incurred by plaintiff, *see* note 4, *supra*.

7. The court recognizes the possible need for an evidentiary hearing on a motion for sanctions pursuant to Rule 37, Fed.R.Civ.P., when a high monetary penalty is requested or imposed. *See McFarland v. Gregory*, 425 F.2d 443 (2d Cir. 1970) (hearing required when a penalty or sanction in the amount of $7,114

was imposed). Where, as here, a far smaller sanction is being imposed, no such hearing is required. *See Stanziale v. First National City Bank*, 74 F.R.D. 557, 560 n.5 (S.D.N.Y. 1977) (hearing not required when expenses in the amount of $750 were awarded).

8. On the significance of appearing as counsel of record, *see* note 5, *supra*.

the discovery requests which plaintiff filed on March 5, 1980 and which Attorney Z finally answered for defendant on September 10, 1981. On February 19, 1980, it was Attorney S who wrote to the court on behalf of defendant reporting the rejection of plaintiff's settlement offer.

Plaintiff has certified that all of its discovery requests and motions were served on either Attorney S alone or on all counsel of record. From this the court concludes that Attorney S had actual notice of, and has had an opportunity to be heard in,[9] all proceedings in this action which are relevant to a determination of plaintiff's renewed Motion for Sanctions. Nevertheless, Attorney S has never responded to any of plaintiff's filings in connection with the Motion for Sanctions. Since July 22, 1981, Attorney Z has submitted two documents to the court in which he attributes defendant's failures of compliance to Attorney S's "lack of diligence." Defendant's Response ¶ 2; Z Letter of July 22, 1981.[10] Attorney S has never disputed Attorney Z's allegations, or responded in any way to Attorney Z's written submissions. In these circumstances, it is appropriate and just that Attorney S assume greater liability to plaintiff under the terms of the court's award of expenses and attorney's fees.

*Additional Sanctions*

 In view of the repeated and unjustified failures of compliance, for which the court finds Attorney S to be primarily responsible, the court has considered the propriety under applicable rules of imposing an additional sanction upon Attorney S. It has, therefore, reviewed the sources of its authority to impose such additional sanctions including, in particular, the assessment of a fine payable to the court out of Attorney S's personal funds.[11]

---

**9.** A case which is analogous to the one at bar arises when, pursuant to its inherent power, a court considers holding a delinquent attorney personally liable for the fees of his adversary counsel. In such cases, the Supreme Court has stated that due process calls only for notice and an opportunity to be heard: "Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Roadway Express, supra*, 447 U.S. at 767, 100 S.Ct. at 2464. The Court suggested, however, that in cases involving the imposition of sanctions, an attorney has fewer due process rights than his client: "The due process concerns posed by an outright dismissal are plainly greater than those presented by assessing counsel fees against lawyers." *Id.* at 767 n.14, 100 S.Ct. at 2464 n.14. With respect to the assessment of fees and expenses against defendant's counsel of record in the present case, both of defendant's counsel have received the process due. *See* note 7, *supra*, and note 11, *infra*.

**10.** Attorney Z has certified that a copy of Defendant's Response was served on "all counsel of record" in this action on August 14, 1981. The Z Letter of July 22, 1981 does not specifically indicate that Attorney S was to receive a copy of it. However, this letter has been a part of the public file of the action since July 23, 1981. This letter makes the identical allegation of "lack of diligence" by Attorney S as is contained in Defendant's Response.

**11.** The court's authority to impose any discovery sanction, including a fine, is limited by considerations of constitutional due process. *See generally Societe Internationale v. Rogers*, 357 U.S. 197, 209, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958). As with the imposition of other discovery sanctions, the nature of the process which is due before a fine may be levied depends on the facts of each case and the severity of the fine being considered. *See generally Discovery Sanctions* 281; Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, *Preliminary Draft of Proposed Amendments to the Federal Rules of Civil Procedure* 28 (June 1981). *Cf. Link v. Wabash Railroad Co*, 370 U.S. 626, 632, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962) ("[N]ot ... every order entered without notice and a preliminary adversary hearing offends due process."). Thus an evidentiary hearing may be required when a substantial fine is being considered, *see* note 7, *supra*, or when there is a material fact in dispute, *see Flaks v. Koegel*, 504 F.2d 702, 712 (2d Cir. 1974). Where, however, the fine in the circumstances is relatively mild, *see, e.g.*, note 7 *supra*, and there is no material fact in dispute, due process requires only that the delinquent party be provided with notice of the possibility that sanctions will be imposed and with an opportunity to present evidence or arguments against their imposition. *Cf. Roadway Express, supra*, 447 U.S. at 767, 100 S.Ct. at 2464 (assessment of attorney's fees pursuant to court's inherent powers); *see generally Discovery Sanctions* 281.

The Supreme Court has stated that "[t]he adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge

 A federal trial court possesses inherent power to control the disposition of the cases before it. *Link v. Wabash Rail-*

*road Co.*, 370 U.S. 626, 630–631, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962). This includes the authority to "levy sanctions in

Note 11—Continued

which the circumstances show such party may be taken to have of the consequences of his own conduct." *Link v. Wabash Railroad Co., supra,* 370 U.S. at 632, 82 S.Ct. at 1389. Rule 37, Fed.R.Civ.P., enumerates a broad range of sanctions, including sanctions against delinquent counsel, which may be imposed in the event of a failure to provide discovery. Rule 37 also makes clear that unless the failure was substantially justified, the court shall hold the offending party liable for the other side's expenses. In view of the plain language and clear intent of Rule 37, any attorney who fails to comply with the requirements of Rule 37 may be deemed to understand the consequences of his conduct. Thus, as the Supreme Court recognized in *Roadway Express, supra,* 447 U.S. at 767 n.14, 100 S.Ct. at 2464 n.14, the assessment of a financial sanction against an attorney causes fewer due process concerns than does a sanction against his client.

In view of these principles, Attorney S has received precisely the process due. Attorney O has certified that he provided Attorney S with actual notice of both the Motion to Compel and the Motion for Sanctions. A full five months have passed since the filing of the Motion to Compel without the court's having received any responding papers from Attorney S. In determining the appropriate sanction, there is no material issue of fact to be resolved because it is now settled that negligent, no less than intentional, wrongs of attorneys are fit subjects for the general deterrence which a fine is intended to achieve. *Cine Forty-Second St., supra,* 602 F.2d at 1067. Where, in addition, the fine under consideration is relatively mild, due process requires only notice and an opportunity to be heard. Having reviewed the entire record of this case, the court concludes that Attorney S has received adequate notice of the possibility that sanctions would be imposed and a full opportunity to present evidence or arguments in opposition.

The typical discovery sanction under Rule 37 is an assessment of costs and fees payable to the victimized party. The purpose of such sanctions is largely compensatory. In contrast, a fine imposed upon an offending attorney is payable to the court. Its purpose is essentially punitive and deterrent. It might be argued, therefore, that because of the punitive nature of a fine, additional procedural safeguards must be adopted before one may be imposed. *See, e.g., Gamble v. Pope & Talbot, Inc.,* 307 F.2d 729, 730 (3rd Cir.) (en banc), *cert denied sub nom. United States District Court v. Mahoney,* 371 U.S. 888, 83 S.Ct. 187, 9 L.Ed.2d 123 (1962) (because a fine against counsel carries "the criminal hallmark," the court's authority to impose a punitive sanction such as a fine must

derive from the federal contempt statute, 18 U.S.C. § 401, and is limited by the procedural requirements of Rule 42, Fed.R.Crim.P.).

Any such argument would not be convincing, however. First, it is now clear that there is a punitive or deterrent element in *all* discovery sanctions. *Roadway Express, supra,* 447 U.S. at 763–764, 100 S.Ct. at 2462; *Cine Forty-Second St., supra,* 602 F.2d at 1066 ("[A]lthough the most drastic sanctions may not be imposed as 'mere penalties,' [citations omitted] courts are free to consider the general deterrent effect their orders have on the instant case and on other litigation, provided that the party on whom they are imposed is, in some sense, at fault."). The recognition of this punitive element has not, in general, led to the requirement that courts establish additional procedures before imposing discovery sanctions. To the contrary, recent cases and commentary suggest the wisdom of the district courts' drawing even more promptly and diligently on their authority to sanction for discovery abuses. *See Roadway Express, supra,* 447 U.S. at 763–764, 100 S.Ct. at 2462; *Discovery Sanctions* 272 ("Courts need not and should not wait for lawyers and litigants to initiate proceedings where there is substantial reason to believe that the processes of the court have been abused.").

Moreover, in analogous circumstances, the courts of appeals have imposed punitive sanctions directly upon counsel without procedural protections beyond those of notice and an opportunity to be heard. Rule 38, Fed.R.App.P., provides, in full, that "[i]f a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." Similarly, 28 U.S.C. § 1912 provides, in full, that "[w]here a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs." Double costs, by definition, exceed the amount of money required to compensate appellees for the expenses incurred in opposing a frivolous appeal. To the extent that the court awards double costs, therefore, the sanction imposed on the appellants, or their counsel, is necessarily punitive and thus designed to serve as a deterrent.

Drawing on this authority, as well as that of 28 U.S.C. § 1927, *see* note 12 *infra,* our Court of Appeals has, with some frequency, levied substantial sanctions directly against offending counsel. A review of these cases suggests that the penalties were imposed without first conducting special hearings on the propriety of sanctions. *See Shuffman v. Hartford Textile Corp.,* 659 F.2d 299, 305 (2d Cir. 1981) (double costs and damages of $5000 assessed against counsel); *Bankers Trust Co. v. Publicker Indus-*

response to abusive litigation practices." *Roadway Express, supra,* 447 U.S. at 765, 100 S.Ct. at 2463 (1980). The court's authority to assess such sanctions against counsel is at least as great as its authority to assess them against litigants. *Id.* at 766, 100 S.Ct. at 2464. Indeed, "[t]he inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it [footnote omitted]." *Flaksa v. Little River Marine Construction Co.* ("*Flaksa v. Little River*"), 389 F.2d 885, 888 (5th Cir.), *cert. denied,* 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968). *Cf.* 28 U.S.C. § 1927 (personal liability of counsel "who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously").[12] Such sanctions may include financial assessments

---

tries, Inc., 641 F.2d 1361, 1368 (2d Cir. 1981) (double costs and either damages of $10,000 or attorneys' fees and expenses, whichever sum was less, assessed jointly against appellant and its counsel); *Browning Debenture Holders' Committee v. DASA Corp.,* 605 F.2d 35, 40–41 (2d Cir. 1978) (double costs and damages of $2,500 assessed against appellants' counsel); *Acevedo v. Immigration and Naturalization Service,* 538 F.2d 918, 921 (2d Cir. 1976) (double costs assessed against petitioner's counsel). In these circumstances, therefore, defendant's counsel has received the procedural protection required by applicable law.

**12.** It is arguable that 28 U.S.C. § 1927 provides an independent basis for the imposition of a fine in this case. The threshold question is whether § 1927 encompasses the multiplication of proceedings caused by the delays, or inactivity, of counsel, as well as the multiplication caused by the filing of frivolous motions and actions. Section 1927 was originally intended to prevent unnecessary lawsuits. Congress enacted the first version of § 1927 in 1813. It was drafted by a Senate Committee appointed "to inquire what Legislative provision is necessary to prevent multiplicity of suits or processes, where a single suit or process might suffice ...." 26 Annals of Cong. 29 (1813), *quoted in Roadway Express, supra,* 447 U.S. at 759, 100 S.Ct. at 2460. Section 1927 was substantially re-enacted in 1853, at which time Congress again indicated that the purpose of the statute was to prevent the filing of unnecessary actions and motions. Congress stated that the statute was intended "to prevent abuses arising from ingenious constructions ... to discourage unnecessary prolixity, old useless forms, and the multiplication of proceedings, and the prosecution of several suits which might better be joined in one." H.R. Rep.No.50, 32d Cong., 1st Sess., 6 (1852), *quoted in Roadway Express, supra,* 447 U.S. at 760–761, 100 S.Ct. at 2461.

Section 1927 appears, then, to have been intended primarily to punish attorneys for commencing groundless litigation. Courts have, with some frequency, relied on § 1927 to impose sanctions in such cases. In *Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1089 (2d Cir. 1977), our Court of Appeals held that § 1927 authorized personal liability for costs and attorneys' fees where "procedural motions or other actions [had been] undertaken in bad faith, without justification or for an improper purpose such as harassment or delay[.]" After affirming the district court's judgment on the merits, the Court in *Browning Debenture Holders' Committee* remanded the matter to the district court for specific findings "relat[ing] claimed expenses, costs, and fees to particular bad faith maneuvers." *Id.; see Acevedo v. Immigration and Naturalization Service, supra,* 538 F.2d at 921 (frivolous petition to reopen deportation proceedings); *Fisher v. Fashion Institute of Technology,* 491 F.Supp. 879, 889–890 (S.D. N.Y.1980) ("pointless and vexatious" trial tactics, "apparently intended to harass defendants at trial."); *North American Foreign Trading Corp v. Zale Corp.,* 83 F.R.D. 293, 297 (S.D.N.Y.1979) (groundless motion, filed in bad faith, to disqualify opposing counsel).

Despite the apparent Congressional intent in § 1927, the language of the statute is broad enough to include any conduct of counsel which causes a multiplication of proceedings. Thus, where delay or lack of preparation by counsel triggers action by the other side (for example, a motion to compel discovery) or requires the court to conduct additional proceedings, § 1927, by its terms, would seem to authorize the assessment of costs against the delinquent attorney. In at least one such case of inaction by an attorney, our Court of Appeals has relied on § 1927 to impose an assessment of costs. *See Bardin v. Mondon,* 298 F.2d 235, 238 (2d Cir. 1961) (assessment of $100 against counsel who was not prepared to commence trial as ordered by the court). Moreover, in *Roadway Express, supra,* the Supreme Court recently made clear that § 1927 would be available to assess costs against counsel who delayed and failed to cooperate in pre-trial discovery. In that case, plaintiffs' attorneys had engaged in what the district court had called "deliberate inaction." *Roadway Express, supra,* 447 U.S. at 755, 100 S.Ct. at 2458. Counsel had ignored defendant's discovery requests and the court's discovery orders. *Id.* at 754–755, 100 S.Ct. at 2458. Ultimately, the district court both dismissed the action and held plaintiffs' counsel personally liable for defendant's costs and attorneys' fees, a total assessment in excess of $17,000. *Id.* at 756, 100 S.Ct. at 2459.

against attorneys. For example, before Rule 37 was amended to authorize the award of costs and fees, courts drew on their inherent authority to hold attorneys personally liable for the costs incurred by other parties in attempting to compel discovery. *Austin Theatre v. Warner Bros. Pictures*, 22 F.R.D. 302, 304 (S.D.N.Y.1958) ($50 costs and expenses); *United Sheeplined Clothing Co. v. Artic Fur Cap Corp.*, 165 F.Supp. 193, 194 (S.D.N.Y.1958) (same); *see Advisory Committee Note of 1970 to Rule 37(b)(2); see also Ali v. A & G Co.*, 542 F.2d 595, 597 (2d Cir. 1976) (Oakes, J., dissenting) ("The power to impose costs on attorneys as a disciplinary measure is a well-settled, if perhaps infrequently used, facet of a court's inherent authority over the attorneys who practice before it.")

▮▮▮▮▮ Pursuant to Rule 41(b), Fed.R. Civ.P., a court may impose financial sanctions upon an attorney who fails to prosecute his client's case diligently, or who otherwise engages in dilatory conduct, or who fails to comply with the Federal Rules of Civil Procedure or any order of the court. *Bardin v. Mondon*, 298 F.2d 235, 239 (2d Cir. 1961) (all trial and appellate court costs of attorney's own client). These sanctions may include fines payable to the court, which reflect, in part, the costs incurred by the court on account of the attorney's conduct. *Moore v. St. Louis Music Supply Co.*, 539 F.2d 1191, 1193 n.2 (8th Cir. 1976) (court costs and jury expenses); *Reizakis v. Loy*, 490 F.2d 1132, 1135–1136 (4th Cir. 1974) (fine or costs); *Richman v. General Motors Corp.*, 437 F.2d 196, 199 n.4 (1st Cir. 1971) (fines); *Dyotherm Corp. v. Turbo Machine Co.*, 392 F.2d 146, 149 (3d Cir. 1968) (finding of contempt and $25 fine); *King v. Mordowanec,* 46 F.R.D. 474, 478 n.5 (D.R.I.1969) (fines); *cf. In Re Bithoney*, 486 F.2d 319, 325 (1st Cir. 1973) ($500 fine and suspension of attorney, pursuant to Rule 46, F.R. App.P., for "conduct unbecoming a member of the bar of the court"); *see generally* 5 *Moore's Federal Practice* ¶ 41.11[2] at 41–143 to 41–145 (1981 ed.).[13]

---

In rendering its award, the district court had relied on "the confluence of several statutes," *id.*, including 28 U.S.C. § 1927. On appeal, both the Fifth Circuit and the Supreme Court held that attorneys' fees were not among the "excess costs" which could be assessed under § 1927, *see Monk v. Roadway Express, Inc.*, 599 F.2d 1378 (5th Cir. 1979). The Supreme Court also held that the costs which could be assessed under § 1927 were limited to those set forth as taxable litigation costs in 28 U.S.C. § 1920. 447 U.S. at 758–761, 100 S.Ct. at 2460–2461. (In so holding, the Supreme Court implicitly rejected the view of the Second Circuit, which had been stated in such cases as *Browning Debenture Holders' Committee v. DASA Corp., supra*, 560 F.2d at 1089, that attorneys' fees could be assessed under § 1927). Nevertheless, in explicitly affirming the Fifth Circuit's ruling on § 1927, 447 U.S. at 767, 100 S.Ct. at 2464, the Supreme Court left no doubt that § 1927 was available for an assessment of the excess costs caused by the unjustified and vexatious delays of attorneys.

If § 1927 is inapplicable in the present case, it is because of the limiting construction placed on the concept of "costs" by the Supreme Court in *Roadway Express.* Section 1920 identifies the "costs" for which a litigant may be taxed. Under § 1927, as construed in *Roadway Express,* a delinquent attorney may be held liable only for the "costs" which had previously been incurred by his adversary under

§ 1920. Neither section 1927 nor section 1920 refers, by its terms, to court costs. Although the Supreme Court has recognized the importance of considerations of general deterrence in assessing sanctions under Rule 37, *id.* at 763–764, 100 S.Ct. at 2462, it has not specifically extended that rationale to § 1927. Thus, there must be some question whether § 1927 alone would provide a sufficient basis for the imposition of a fine reflecting considerations of court costs and general deterrence.

This court has found sufficient authority for the imposition of a fine in Rule 37, Rule 41(b), and its inherent powers. Accordingly, it need not reach the question of the precise scope of the sanctions authorized by § 1927 or the applicability of that statute in cases of this sort, and intimates no view on those issues.

**13.** In the Second Circuit, the United States District Courts for the Southern and Eastern Districts have promulgated local rules which provide trial judges with additional authority to impose reasonable financial sanctions on counsel who have unduly delayed court proceedings. In *In re Sutter*, 543 F.2d 1030 (2d Cir. 1976), our Court of Appeals held that promulgation of Rule 8(b) of the Individual Assignment and Calendar Rules for the Eastern District, which authorizes such sanctions, was a valid and appropriate exercise of the inherent power of trial courts to manage their dockets.

Fines may be imposed upon offending attorneys under Rule 41(b) even though that rule, by its terms, specifically provides only for the sanction of dismissal of the action. Indeed, fines are an appropriate sanction under Rule 41(b) precisely because dismissal is the only sanction specified by that rule. That is, the district courts have been directed to avoid the harsh result of dismissal in cases where the delays or disobedience have been the fault of counsel rather than their clients. In these cases, the courts may draw on their inherent authority to control the course of litigation to impose on counsel the less severe sanction of a fine. *Roadway Express, supra,* 447 U.S. at 765, 100 S.Ct. at 2463; *cf. Schwarz v. United States,* 384 F.2d 833, 836 (2d Cir. 1967) (affirming dismissal pursuant to Rule 41(b); "suggest[ing] that the [district] court keep in mind the possibility, in future cases of inexcusable neglect by counsel, of imposing substantial costs and attorney's fees payable by offending counsel personally to the opposing party, as an alternative to the drastic remedy of dismissal."); *see Flaksa v. Little River, supra,* 389 F.2d at 888–89.

The failure to provide discovery, or to comply with a court's discovery orders, is itself a failure to prosecute an action diligently. Thus the rationale for imposing fines upon offending counsel, which was developed under Rule 41(b), would appear to apply with equal force to violations of the rules governing pre-trial discovery.[14] If a party fails to provide discovery or to comply with a court's discovery orders, Rules 37(b) and 37(d) provide for the entry of such orders "as are just," including any of several sanctions enumerated in Rule 37(b). Among these are an order that designated facts shall be taken to be established for purposes of the action, Rule 37(b)(2)(A); an order preventing the disobedient party from supporting or opposing designated claims or defenses, Rule 37(b)(2)(B); the entry of dismissal or default, Rule 37(b)(2)(C); the striking of the pleadings of the offending party, Rule 37(b)(2)(C); and the award of reasonable expenses, including attorney's fees, Rule 37(b)(2). There is no indication in Rule 37 that this list of sanctions was intended to be exhaustive. Indeed, the fact that Rule 37 also provides for the entry of such orders "as are just" suggests that, under that rule, a court possesses the authority to fashion any of a range of appropriate orders to enforce compliance with the requirements of pre-trial discovery. *See Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir. 1974) (noting discretionary nature of discovery sanctions); *Davis v. Marathon Oil Co.,* 528 F.2d 395, 403 (6th Cir. 1975) (McCree, J.), *cert. denied,* 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976) ("A trial court has broad discretion in its choice of sanctions for failure to comply with discovery orders and, in appropriate circumstances, it may even dismiss the case.").

---

In *Schneider v. American Export Lines, Inc.,* 293 F.Supp. 117 (S.D.N.Y.1968), the court relied on Rules 7(b)(1), 16(b) and 16(c) of the Calendar Rules for the Southern District to hold counsel personally liable for the costs incurred by his adversary when counsel was not prepared to proceed with a scheduled trial. There is, at present, no comparable local rule in the District of Connecticut. *See* pp. 356–358, *infra.*

**14.** By its terms, Rule 41(b) provides only for the sanction of dismissal of an action. Thus it could be argued that Rule 41(b) may properly be invoked only to punish plaintiffs for their failure to prosecute an action. (On that narrow reading of Rule 41(b), it might also be argued that a comparable sanction against defendants is authorized by Rule 55(a), Fed.R.Civ.P., which permits the entry of default against any defendant who "has failed to plead or otherwise defend as provided by these rules[.]"). Rule 41(b) codifies the inherent power of the courts to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases. [footnote omitted]." *Link v. Wabash Railroad Co., supra,* 370 U.S. at 630–631, 82 S.Ct. at 1388. The rationale of Rule 41(b), therefore, would seem to justify sanctions against defendants, as well as against plaintiffs.

In any event, Rule 37 draws no distinction between plaintiffs and defendants for purposes of imposing sanctions. It makes clear that either side, as well as counsel, may be held liable for discovery abuses. Thus where there have been unjustified delays by a defendant's counsel in the court of pre-trial discovery, Rule 37 expressly authorizes the imposition of financial sanctions against that attorney, while that authority is only implicit in Rule 41(b).

In *Shapiro v. Freeman, supra,* 38 F.R.D. at 308, the court drew on its discretionary authority under Rule 37 to fashion a remedy and sanctions that were more extensive than those requested by the moving parties. In that case, the court had previously ordered that certain witnesses submit to depositions. However, plaintiffs' attorney "obstruct[ed] and frustrate[d] the depositions by advising, instructing, and beseeching the deponents not to answer perfectly proper questions[.]" *Id.* at 311. Upon defendants' motion to compel answers to their deposition questions, and for an award of expenses and $250 in counsel's fees, the court found that "in the light of the history of these discovery proceedings . . . the particular relief sought by defendants is inadequate." *Id.* at 312. The court concluded that "the ends of justice" compelled the appointment of a special master to preside over all future depositions in the case, and ordered that the fees and expenses of the special master would be "paid by plaintiffs' attorneys without reimbursement from their clients [citing *Bardin v. Mondon, supra*]." *Id.* This ruling illustrates the "flexibility as to sanctions" intended by Rule 37. Advisory Committee on Civil Rules, *Note to 1970 Amendment to Rule 37(d),* Fed. R.Civ.P. (1980 ed.).

It would appear, then, that the imposition of a fine upon counsel may be an appropriate sanction for a failure, due to the fault of counsel, to comply with the requirements of Rule 37. Nevertheless, the court has found no recent case in which a district court assessed such a fine, payable to the court, pursuant to Rule 37. This apparent reluctance to impose fines may result, in part, from the fact that Rule 37 specifically provides for financial sanctions against counsel in the form of an award of expenses and attorney's fees to the opposing party. *See generally,* Renfrew, *Discovery Sanctions: A Judicial Perspective ("Discovery Sanctions"),* 67 Cal.L.Rev. 264, 271–273 (1979) (on the reluctance of trial judges to impose the full range of Rule 37 sanctions). Moreover, in one case where a district court levied a fine against counsel, payable to the court, the Third Circuit reversed, holding that a fine could not be assessed without first holding a hearing and entering a finding of contempt. *Gamble v. Pope & Talbot, Inc.,* 307 F.2d 729 (3d Cir.) (en banc), *cert. denied sub. nom. United States District Court v. Mahoney,* 371 U.S. 888, 83 S.Ct. 187, 9 L.Ed.2d 123 (1962) (*"Gamble"*).

The decision in *Gamble* should not be construed too broadly. It did not treat the full range of pre-trial sanctions. Even then, it merely erected a procedural obstacle to the imposition of fines against counsel. It did not challenge the principle that, in cases where the failure of compliance is the fault of counsel, any sanction (including a fine) should be imposed upon counsel rather than the litigant. As one commentator on *Gamble* has observed:

> Although the Third Circuit reversed [footnote omitted], holding that a court has no power to fine an attorney who was neither held in contempt nor given a hearing, the lower court's reasoning retains its vitality: where the attorney is clearly at fault, the unoffending party should not suffer. *Moreover, since the Supreme Court has not passed on the constitutional propriety of a fine in such circumstances, this measure is still available in other circuits.*

Note, *Sanctions at Pretrial Stages,* 72 Yale L.J. 819, 830 (1963) (emphasis supplied).

Indeed, our own Court of Appeals has rejected the reasoning of the Third Circuit in *Gamble.* In *Gamble,* it had been argued that the district court's imposition of a fine without a prior finding of contempt had been authorized by a local rule which provided for the assessment of discovery sanctions without conducting "formal contempt proceedings." *Gamble, supra,* 307 F.2d at 731. Although the Third Circuit was not asked to overturn the local rule in question, its reversal of the district court's sanction implicitly called into question the authority of the district court judges to adopt such a local rule. *Id.* at 732 (". . . the local rule making [sic] power, while not limited to the trivial, cannot extend to basic disciplinary innovations requiring a uniform approach.")

In *In re Sutter*, 543 F.2d 1030 (2d Cir. 1976), our Court of Appeals was required to rule on the validity of a fine, payable to the court, which the district court had levied against counsel for causing a delay in the commencement of trial. *Id.* at 1036 (on costs incurred by the court due to the delay in starting trial and the reasonableness of the trial court's fine in the light thereof). That sanction had been imposed pursuant to a local rule of the United States District Court for the Eastern District of New York. Neither party had challenged the validity of the local rule. Citing *Gamble*, however, the Court of Appeals stated that "[i]n view of the fact that the Third Circuit Court of Appeals has invalidated a similar rule imposing sanctions on lawyers . . . we feel it is necessary to consider the question." *In re Sutter, supra*, 543 F.2d at 1036. After considering the authorities for the promulgation of the local rule and citing the criticism to which the Third Circuit's decision in *Gamble* had been subjected, *id.* at 1037 n.9, the Court of Appeals explicitly "decline[d] to follow the Third Circuit, and [held] that district courts have the power, absent a statute or Supreme Court rule to the contrary, to promulgate local rules that impose sanctions for conduct by lawyers that falls short of contempt of court." *Id.* at 1037–1038. Because the district court's sanction had been authorized by the local rule, and because there was nothing arbitrary or unfair about that rule, the Court of Appeals affirmed the district court's assessment of $1500 in court costs, payable to the court, directly against the attorney who had caused the delay. *Id.* at 1038.

In the District of Connecticut, there is no local rule authorizing sanctions against counsel which is analogous to the local rule in *In re Sutter*. The reasoning of the Court of Appeals in *In re Sutter*, however, supports the imposition of a fine in the present circumstances. In *In re Sutter*, the Court of Appeals found the district court's rulemaking authority to be grounded, at least in part, in the "inherent power of a court to manage its affairs." *Id.* at 1037. The individual trial court's inherent power includes the "authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Id., quoting Flaksa v. Little River, supra*, 389 F.2d at 888. Moreover, the Court of Appeals recognized the "unfairness of visiting the sins of an attorney upon his client," and thus "the need for a sanction in the nature of [an assessment against counsel.]" *Id.* at 1037.

■ In the view of our Court of Appeals, therefore, the authority of a judicial district to promulgate rules permitting sanctions against counsel is actually derived from the inherent power of the individual trial court. Because the district's rulemaking authority may be exercised "absent a statute or Supreme Court rule to the contrary," *id.*, it follows that, in the absence of an applicable local rule or of any statutory or Supreme Court authority to the contrary, the individual trial court may draw on its inherent authority to impose appropriate sanctions upon counsel whose conduct may not rise to the level of "contempt." *See id.* at 1037–38.

Moreover, if the Supreme Court were required to resolve this conflict of authorities, it would in all likelihood follow the approach of the Second Circuit. Recent cases have implicitly called into question the continuing validity of *Gamble*. In addition to underscoring the discretionary nature of Rule 37 sanctions, the Court in *National Hockey League, supra*, 427 U.S. at 643, 96 S.Ct. at 2781, emphasized the role of Rule 37 sanctions in deterring violations of the federal rules governing discovery. The Court stated that, in the absence of vigorously applied and severe sanctions in the particular case, "other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts." *Id.; see generally* Note, *The Emerging Deterrence Orientation in the Imposition of Discovery Sanctions*, 91 Harv.L.Rev. 1033 (1978) ("*Emerging Deterrence Orientation*").

In addition, the Court has recently cited with approval one of the dissenting opinions in *Gamble* for the proposition that a court possesses the authority to discipline the at-

torneys who appear before it. *Roadway Express, supra,* 447 U.S. at 766 n.12, 100 S.Ct. at 2464; *see Flaksa v. Little River, supra,* 389 F.2d at 888 n.10 (also citing with approval the dissenting opinions in *Gamble*). The Supreme Court has stated that "[i]f a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial. processes." *Roadway Express, supra,* 447 U.S. at 766, 100 S.Ct. at 2464. In support of that principle, the Court has cited the particular practice of the New York state courts, which have "ordered attorneys who delay litigation to pay costs or fines to the opposing party." *Id.* at 767 n.13, 100 S.Ct. at 2464.

These statements by the Supreme Court reflect its recognition that, in an era of rapidly expanding dockets,[15] district courts must be permitted to draw on the full range of their inherent powers, and on the sanctions authorized by applicable federal rules, to avoid undue delays in the disposition of cases. *See Discovery Sanctions* 267; *Emerging Deterrence Orientation* 1054–1055; *cf.* Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, *Preliminary Draft of Proposed Amendments to the Federal Rules of Civil Procedure* 27–28 (June 1981) ("Concern about discovery abuse has led to widespread recognition that there is a need for more aggressive judicial control and supervision .... [T]he premise of [proposed] Rule 26(g) is that imposing sanctions *on attorneys* who fail to meet the rule's standards will significantly reduce abuse by imposing disadvantages therefor." [emphasis supplied] ).

■ Pursuant to Rule 37, Fed.R.Civ.P., a court may assess against delinquent counsel a financial sanction equivalent to the fees and expenses incurred by the opposing party, and payable to the opposing party. The Supreme Court has not yet determined whether, without an evidentiary hearing or finding of contempt, a court may, for a violation of Rule 37, assess against offending counsel a fine which is payable to the court and which is based either on the court's costs or on considerations of deterrence. In determining whether it would be appropriate to impose a fine in the present case, the court has considered a number of factors, including its settled authority to control the cases and counsel before it; the recent Supreme Court statements on the scope and rationale of Rule 37 sanctions; and the growing recognition, among other courts, commentators, and the draftsmen of the Federal Rules of Civil Procedure, that such sanctions should serve functions other than the mere compensation of opposing parties.

■ The court has also considered the special circumstances of the present case. In particular, Attorney S has engaged in a prolonged failure to provide discovery, which failure was not explained, let alone justified. He has also disobeyed (1) the court's order of February 7, 1980, setting a schedule for the conduct and completion of discovery, pursuant to Rule 26(f), Fed.R. Civ.P.,[16] and (2) the court's order of June 5,

---

**15.** Between 1975 and 1981, the number of civil cases filed each year in the United States District Courts increased by 53.9 percent. Administrative Office of the United States Courts, *Annual Report of the Director* 3–4 (1981).

**16.** In the present case, a fine is being levied against defendant's counsel for his unjustified failures to provide discovery and to comply with a court order compelling discovery, which order was entered pursuant to Rule 37(a), Fed. R.Civ.P. Rule 37(b)(2) authorizes the imposition of sanctions, including sanctions directly against delinquent counsel, if a "party fails to obey an order to provide or permit discovery, including an order made under [Rule 37(a) ]."

Rule 37(b)(2) also provides that "if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just[.]"

Rule 26(f), Fed.R.Civ.P., governs the conduct of discovery conferences in the United States District Courts. It provides, *inter alia,* that "[a]t any time after commencement of an action the court may direct the attorneys for the parties to appear before it for a conference on the subject of discovery." Rule 26(f) further provides that, following the discovery conference, the court shall enter an order tentatively identifying the issues for discovery purposes,

1981 (by Magistrate Eagan), compelling responses to the Interrogatories by no later than June 19, 1981. Moreover, plaintiff's counsel has requested reimbursement of only $150, a sum which, in today's legal market, must be considered exceptionally low.

Effective case management is no longer a task for counsel alone. Rule 1, Fed.R. Civ.P., directs the district courts to construe the Federal Rules to "secure the just, speedy, and inexpensive determination of every action." *See Herbert v. Lando*, 441 U.S. 153, 177, 99 S.Ct. 1635, 1649, 60 L.Ed.2d 115 (1979). The importance of prompt determinations has been stressed repeatedly. As early as 1958, then Chief Justice Warren noted the "interminable and unjustifiable delays in our courts," and urged federal judges to "bring the full prestige of [their] judicial office to bear at every stage of litigation to ensure promptness and efficiency," *quoted in* Kaufman, *The Philosophy of Effective Judicial Supervision Over Litigation* ("*Effective Judicial Supervision*"), 29 F.R.D. 207 (1961). More recently, Chief Justice Burger has reiterated this theme, declaring that "[t]he responsibility for control [of pretrial processes] rests on both judges and lawyers. Where existing rules and statutes permit abuse, they must be changed. Where the power lies with judges to prevent or correct abuse and misuse of the system, judges must act." Address to American Bar Association Mid-Year Meeting 6 (Feb. 3, 1980), *quoted in* Dissenting Statements of Justices Powell, Stewart and Rehnquist upon the Supreme

Court's Transmission to Congress of Certain Amendments to Federal Rules of Civil Procedure, 446 U.S. 997, 999 n.4 (1980). Judge Irving R. Kaufman has stated that "it is the duty of the judge, and the judge alone, as the sole representative of the public interest, to step in at any stage of the litigation where his intervention is necessary in the interests of justice." *Effective Judicial Supervision* 216; *see generally* American Bar Association, Section on Litigation, *Report of the Special Committee for the Study of Discovery Abuse* (October 1977).

The judiciary's use of case and court management techniques can help speed the termination of civil actions without impairing the quality of justice. S. Flanders, *Case Management and Court Management in United States District Court* ix–x (Federal Judicial Center 1977); *see also* P. Connolly, E. Holleman and M. Kuhlman, *Judicial Controls and the Civil Litigative Process: Discovery* 3 (Federal Judicial Center 1978). The imposition of just and reasonable sanctions is one of the established techniques which a trial court may use to achieve the end of speedy justice. The Supreme Court has directed the lower federal courts to employ such sanctions, directly against counsel, where appropriate. *Roadway Express, supra; National Hockey League, supra; cf. Link v. Wabash Railroad Co., supra*, 370 U.S. at 629–630, 82 S.Ct. at 1388 ("The power to invoke [sanctions] is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts.").

*establishing a plan and schedule for discovery*, setting limitations on discovery, if any; and determining such other matters, including the allocation of expenses, as are necessary for the proper management of discovery in the action. An order may be altered or amended whenever justice so requires.
(emphasis supplied).
Rule 26(f) authorizes the court to set dates for the conduct of all pre-trial discovery, including deadlines for the filing of discovery requests and for compliance with those requests. Rule 37(b) authorizes the court to impose sanctions for the failure of any party to adhere to the deadlines established by the court pursuant to Rule 26(f). Moreover, the last paragraph of

Rule 37(b) makes clear that such sanctions may include an assessment of financial penalties directly against those counsel who are responsible for the failure of compliance. Because Rule 37 sanctions are intended to serve punitive and deterrent functions, as well as the goal of compensating victimized parties, the court has found that under Rule 37(b), it possesses the authority to levy against delinquent counsel monetary fines which are payable to the court. In accordance with the clear language of Rule 37(b), the court finds that its authority to assess fines against counsel extends to violations of orders which the court has entered pursuant to Rule 26(f), as well as to violations of any orders which the court has entered pursuant to Rule 37(a).

Most recently, our Court of Appeals has stated that "[w]here justified . . . the imposition of sanctions for discovery abuse is essential to the sound administration of justice." *Penthouse International, Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 391 (2d Cir. 1981) (affirming dismissal of action pursuant to Rule 37 and district court's inherent power); *see also Cine Forty-Second St., supra*, 602 F.2d at 1066. These cases state the now-settled view that litigants, the public, and the courts share an interest in the prompt and efficient administration of justice; that failures of counsel to comply with applicable discovery rules and court orders threaten that common interest; and that reasonable sanctions, carefully and consistently applied, are an appropriate means of deterring further violations and vindicating the public interest.

■ In this case, the conduct of Attorney S has unduly delayed the progress of the litigation, and has put plaintiff to the expense, first, of securing a court order compelling discovery, and, then, of seeking the sanctions authorized by applicable federal rules. This conduct also burdened the court with business that should not have been necessary. These court costs are not reflected in the court's award of fees and expenses to plaintiff.

Due regard for the need to vindicate the public interest in the sound administration of justice, as well as the deterrent function of Rule 37 sanctions, requires that an additional sanction be assessed against Attorney S. In these circumstances, the court finds that it is just and reasonable to require Attorney S to pay to the Clerk of the Court, from his personal funds, a fine of $150.

CONCLUSION

Accordingly, it is hereby ordered that:

1. Within ten days of the entry of this Order, Attorney S shall pay over to plaintiff, in care of its counsel of record, the sum of $100, without recourse to his client or assessment of that sum as a cost of the action;

2. Within ten days of the entry of this Order, Attorney Z shall pay over to plaintiff, in care of its counsel of record, the sum of $50, without recourse to his client or assessment of that sum as a cost of the action;

3. Within ten days of the entry of this Order, Attorney S shall pay to the Clerk of the Court a fine in the amount of $150, without recourse to his client or assessment of that sum as a cost of the action;

4. Within fourteen days of the entry of this Order Attorneys S and Z shall certify to the court, in the form of appropriate affidavits, that (a) they have complied, in full, with the applicable requirements of Paragraphs "1," "2," and "3," *supra*; (b) that such compliance has been accomplished entirely from the personal funds of Attorneys S and Z, and not from any fund which they may be maintaining for the defendant in this action; and (c) that Attorneys S and Z shall not, at any time, assess defendant for any part of the expenses which they have incurred in complying with the requirements of Paragraphs "1," "2," and "3," *supra*.

It is so ordered.